## DAVIS v. HEINER.

No. 3315.   Decided May 3, 1919.   Rehearing Denied June 16, 1919.
(181 Pac. 587.)

1. APPEAL AND ERROR—HARMLESS ERROR—EVIDENCE. In action on contract to purchase cattle, any error in admitting testimony concerning transactions of parties prior to date of bill of sale *held* not prejudicial in view of subsequent acts of parties and findings of jury. (Page 435.)

2. APPEAL AND ERROR—HARMLESS ERROR—STATUTE. Under direct provisions of Comp. Laws 1917, sections 6622 and 6968, Supreme Court will not reverse judgment except for prejudicial error.[1] (Page 435.)

3. TRIAL—INSTRUCTIONS. Refusing requested instructions to find for defendant if he tendered plaintiff a check in satisfaction of all demands and plaintiff accepted it and cashed check, etc., *held* not erroneous in view of instructions given on that issue. .(Page 436.)

4. APPEAL AND ERROR—HARMLESS ERROR—INSTRUCTIONS. Where defendant claimed he had settled a controversy by payment to plaintiff, any error in submitting to jury question whether a bona fide dispute existed is not prejudicial to defendant, since jury, by verdict for plaintiff, must have found that money was not in full payment. (Page 436.)

[1] *Moore* v. *Railroad Co.*, 52 Utah, 373, 174 Pac. 873.

5. ALTERATION OF INSTRUMENTS—EVIDENCE—SUFFICIENCY. Altera-
   tion of a written bill of sale need not be established beyond
   a reasonable doubt.[2]  (Page 437.)
6. TRIAL—INSTRUCTIONS—SUFFICIENCY. Trial court should con-
   cisely state issues to jury, and not merely read the pleadings
   verbatim.  (Page 440.)
7. APPEAL AND ERROR—HARMLESS ERROR—INSTRUCTIONS. Trial
   court's error in simply reading pleadings to jury, and not con-
   cisely stating issues in his own language, *held* not prejudicial,
   where issues were simple, and substantially all allegations in
   both complaint and answer were controverted.[3]  (Page 440.)

Appeal from District Court, Fourth District, Utah County;
*A. B. Morgan*, Judge.

Action by William W. Davis against George A. Heiner.
Judgment for plaintiff, and defendant appeals.

AFFIRMED.

*George Halverson* of Ogden, for appellant.

*Elias Hansen* of Spanish Fork, for respondent.

GIDEON, J.

Three causes of action are stated in the complaint. During
the trial the third cause was dismissed, and that will not be
further considered. The only dispute respecting the second
cause of action is that defendant pleads payment. The whole
controversy is therefore concerned with the first cause of
action.

Plaintiff alleges an oral contract between himself and the
defendant made on or about the 15th day of January, 1917,
by which the plaintiff undertook to purchase certain cattle
for the defendant and to hold the same until about the twenti-
eth day of February that year at which time they were to be

[2] *Dovich* v. *Chief Con. M. Co.*, 53 Utah, 522, 174 Pac. 627.
[3] *Smith* v. *Columbus Buggy Co.*, 40 Utah, 597, 123 Pac. 580.

delivered to defendant at Spanish Fork, Utah; that within the limits fixed by that agreement the defendant undertook to pay the plaintiff the amount paid for the cattle and one dollar additional per head for plaintiff's services; that immediately upon the making of the agreement the plaintiff entered upon the performance of the contract, and bought for the defendant prior to the twentieth day of February approximately, 380 head of cattle. There are some other allegations respecting arrangements for cars in which to ship the cattle between the twentieth and twenty-eighth day of February. It is further alleged that on or about the twenty-eighth day of February the defendant informed the plaintiff that he would be unable to take the cattle at that date, countermanded the order for the cars, and requested plaintiff to feed the cattle for an additional ten days and that defendant would pay for the feed required and also the labor necessary in feeding and caring for the same; that at the request of defendant such arrangements continued until about the tenth day of April, when a new contract or an amendment of the preceding contract was made between the parties; that by the new contract the defendant agreed to pay the plaintiff a definite and fixed sum for certain of the cattle therein specified, being an amount greater than the limit agreed upon in the arrangements made in January; that defendant further contracted to pay the plaintiff the cost of the hay fed to the cattle in the meantime and the reasonable value of the labor for such feeding; that the cattle agreed upon were delivered and accepted by defendant on the ninth and tenth of April, and that plaintiff's claim for such cattle, feed, and labor has not been fully paid.

The answer denied the allegations of the complaint, except as admitted by the affirmative statements. As an additional defense it is alleged that a written contract was made between the plaintiff and defendant on the twelfth day of March, 1917, in which defendant agreed to purchase and the plaintiff agreed to sell to defendant certain cattle therein described, which were to be delivered about April first of that year; that it was stipulated in that agreement that the defendant would pay a feed bill of nine cents per head per day;

that at the date of the contract certain payments were made to plaintiff; that the stock was delivered on the tenth day of April and an additional payment was made at that date; that at the time of delivery and final settlement a dispute arose as to the number and character of the cattle delivered, "the amount due for feed, and the amount due under the terms of the contract, upon account of said cattle and upon account of the dealings of the plaintiff and defendant over said cattle and said feed bill"; that plaintiff and defendant thereupon stated their accounts to each other and it was found that the defendant was indebted to plaintiff at that time in the sum of $1,666, which defendant paid the plaintiff by check, and which the plaintiff accepted in full of all demands against defendant, and that thereafter plaintiff received the amount of said check from the bank upon which it was drawn.

By reply plaintiff admitted the payment of the sums mentioned in the answer, but denied all of the other allegations.

Trial was had to the court and a jury, and resulted in a verdict in favor of plaintiff on the first and second causes of action. From that judgment defendant appeals.

Numerous assignments of error are made respecting the introduction of testimony, refusal of the court to sustain the defendant's motion for a nonsuit, and certain instructions given and others refused.

It appears from the record that both plaintiff and defendant are and have been for a number of years engaged in buying and selling live stock; that prior to the transaction in question the plaintiff purchased cattle for defendant and for a firm known as Heiner Bros., of Salt Lake City, of which firm the defendant was a member. In addition to the particular cattle involved in this action, it is in evidence that during the same period two or three other bunches of cattle were purchased by the plaintiff as the agent or on behalf of the defendant. Respecting these particular cattle the testimony shows that the defendant was present and went with the plaintiff to examine them at the time the purchase was made. They are not involved here, and they are only material as it appears that at the final delivery of the cattle on April ninth and

tenth some of these outside cattle were resold or retained by the plaintiff under a new agreement or arrangement made at that date. It also appears that on or about March 12, 1917, the defendant was at the home of the plaintiff in Spanish Fork, and while the cattle involved in this action were then in possession of the plaintiff the following written bill of sale or memorandum was signed by the plaintiff. It is referred to in the record as Defendant's Exhibit 1:

\            "Bill of Sale for Cattle. Duplicate.
        *        *        *        *        *        *        *

"This is to certify that W. W. Davis, of Spanish Fork, has this day, March 12, 1917, bargained and sold to Geo. A. Heiner, of Ogden, the following described live stock, and does hereby guarantee the title thereto, viz.:

| No. Head. | Description. | Brands. | Location of Brands. | Price per Head. |
|---|---|---|---|---|

"About 150 head of cows at $46 per head.
"About 125 head of 2 year olds at $42 per head.
"About 60 head of 1 year olds at $32 per head,
        to be delivered April 1, 1917, feed bill excepted, at 9 cents
        a day per head.
    "Received in part payment for above-mentioned stock $5,000.
                                        WM. W. DAVIS."

It is admitted that the stock mentioned in this memorandum or bill of sale includes at least part of the cattle delivered to defendant on April tenth. It is the contention of appellant that this written agreement was the consummation of all prior oral agreements had between the parties. It is also his contention (and defendant so testified at the trial) that no subsequent change or amendment was made to that agreement; that the cattle inspected and received by him were delivered pursuant to the same; that payments were made upon the basis provided therein; and that he had fully paid the plaintiff all amounts due for the stock so delivered and accepted. On the other hand, it is the contention of respondent, and the case was apparently tried upon that theory, that at most this writing contained only a partial statement of the arrangements between the parties; that it was a mere memorandum or receipt given at that time for the payment of the amount mentioned therein which was to be applied on the cattle al-

ready purchased by the plaintiff as the agent, or at the request of, the defendant; that, in addition, the stock were not delivered at the time specified, to wit, April first, that a subsequent arrangement or agreement was had on April ninth and tenth by which new obligations were undertaken by both parties; that to all intents and purposes this so-called bill of sale was rendered ineffective; and that the final deal was not completed under the provisions of that contract, but was completed and carried out under arrangements made at the dates of delivery.

Practically all objections to the introduction of testimony on the part of the defendant were based upon the contention that this agreement of March twelfth was a merger of all previous dealings respecting the cattle in question, and for that reason any oral testimony concerning the conversations had between the parties was immaterial and incompetent as tending to vary or contradict the terms of a written agreement. Defendant invokes the elementary rule that, when parties reduce an agreement or contract to writing, all prior negotiations respecting the matter contained within the writing become merged therein, and the writing, in the absence of uncertainty or ambiguity in the language, or fraud on the part of either party, is binding, and oral testimony will not be heard to explain, vary, or contradict the terms of such writing.

In this case the allegations of the complaint are, and the plaintiff's testimony supports the allegations, that a contract was made between the parties in January whereby the plaintiff undertook to buy for defendant certain cattle at not to exceed the price stated, and was to receive as compensation for his services one dollar per head for the cattle purchased. The bill of sale or writing in question is a sale or an agreement to sell the cattle actually bought by plaintiff under the contract claimed by him to have been made in January. We have no way of determining just what was in the minds of the parties when the contract was made in March, except the writing itself. That writing appears to be a complete contract. It is just what it purports to be—a bill of sale—but why it was made or what negotiations or new arrangements led up to its

execution does not appear in the record. That some agreement or arrangement concerning the purchase of these cattle existed prior to March 12th is abundantly shown by defendant's own testimony. Moreover, there is in the record ample proof to support the findings of the jury that, whether or not a contract was made in January, as claimed by the plaintiff, or whatever the purpose of the writing of March twelfth may have been, the final sale or delivery of the stock was not consummated under the terms of either of such agreements. The plaintiff testified, and in that he was corroborated by other witnesses, and the jury must have so found, that when defendant came to accept the cattle on the ninth day of April, some of the stock gotten together by plaintiff were not such as defendant had specified or such as he could handle, and at that time arrangements were made by which plaintiff retained some of the cattle. Respecting that arrangement defendant was asked: ''What, if anything, was said about any rebate to be given Davis as an inducement to take any of those cattle?'' Defendant replied: ''There was a little— I have just forgotten—I think it was a couple of dollars a head, maybe it was three dollars a head, but there was a little I was to give him for taking these cattle that I did not want; yes.''

Apparently there is no dispute as to the number of cattle actually delivered and accepted by defendant, to wit, sixty-one cows, seventy-three two year olds and eighty-three yearlings, a total of 217 head. The number specified to be delivered under the so-called bill of sale was a total of 335 head. There is no dispute but that plaintiff had gathered together, or, as he claims, purchased, something like 380 head, and had that number on hand at the time Exhibit 1 was executed.

Conceding that appellant's contention is right, that all negotiations between the parties prior to March twelfth are immaterial as having been merged in the written agreement, but also conceding that the jury must have found that the final arrangements for the sale and delivery of the cattle actually received by the defendant were made on the ninth and tenth of April, in what way is the defendant injured by the intro-

duction of the testimony objected to? At most, it would only explain the relationship existing between the parties and would have no bearing either way as to what the actual agreement was as made by the parties at the time of the final delivery of the stock. While it may have been error on the part of the court, after the plaintiff admitted the execution of the bill of sale on the date it bears, to admit testimony concerning any arrangements prior to that time, still we are unable to see from the subsequent arrangements or acts of the **1, 2** parties and the findings of the jury how that testimony was prejudicial to the interests of defendant. That this court is not authorized and will not reverse a judgment unless the error complained of is prejudicial is a part of the statute law of this state and is supported by numerous decisions of this court. Comp. Laws Utah 1917, sections 6622 and 6968; *Moore v. Railroad Co.*, 52 Utah, 373, 174 Pac. 873.

It appears that some days after the stock had been shipped from Spanish Fork plaintiff and defendant met in Salt Lake City, and after some hours spent in attempting to arrive at an adjustment concerning the matters involved, the defendant gave plaintiff a check for $1,666 which he insists was delivered by him with the understanding and conditioned that the same was to be in full settlement of all demands or claims upon the part of plaintiff. On the other hand, it is insisted by plaintiff that the check was delivered, not in full settlement, but with the understanding and agreement between the parties that the question of whether there was any additional amount due plaintiff, and, if so, how much, should be left to arbitration, or, as stated, to three disinterested persons.

Complaint is made by appellant of the refusal of the court to give to the jury the following instruction respecting that issue:

"I charge you that under the evidence in this case there was a bona fide dispute between the plaintiff and the defendant, and if you find from the evidence that the defendant (Heiner) offered to pay, and tendered to the plaintiff (Davis) his check for $1,666 in full satisfaction of the demands of the plaintiff against the defendant, and that the plaintiff retained and cashed said check, then I charge you that the plaintiff accepted the check subject to the

conditions imposed by the defendant, and the plaintiff cannot recover in this action, and your verdict should be for the defendant: No cause of action."

The court did, however, instruct the jury covering this particular issue as follows:

"If you find from the evidence in this case that at the time the plaintiff and the defendant met at the Cullen Hotel in Salt Lake City, Utah, in the month of April, 1917, after the cattle mentioned in the evidence had been shipped from Spanish Fork, that there was a bona fide dispute between the plaintiff and the defendant, and if you further find from the evidence that the defendant then and there offered to pay and tendered to the plaintiff the check for $1,666, which is in evidence in this case as Defendant's Exhibit No. 9, conditioned that the said check was so tendered only as a full and complete satisfaction of all plaintiff's claims against the defendant by reason of the transaction set forth in plaintiff's complaint, and if you further find that the plaintiff, fully understanding that said check was so tendered and conditioned on defendant's part, accepted said check, with or without protest, and retained said check, and afterwards cashed the same, then I charge you that the plaintiff accepted said check subject to the conditions imposed by the defendant, and the plaintiff cannot recover in this action, and your verdict should be for the defendant: No cause of action."

We are unable to see what serious ground of complaint appellant has for the failure of the court to give the instruction requested in view of the instruction given. That there was a dispute between the parties respecting the amount due the plaintiff was testified to by both plaintiff and defendant. That they spent some hours in an attempt to come to some agreement as to the correct amount was also testified to by both parties. That at the conclusion of that meeting the defendant gave to the plaintiff a check for $1,666 is admitted, as is also the fact that the plaintiff afterwards received the amount of that check. The controlling or vital question for determination by the jury was whether the check given by defendant was in full payment and so understood by plaintiff at that time. That question was fairly sub-   **3, 4** mitted to the jury by the instruction. Conceding that the proof showed conclusively that a bona fide dispute existed between the parties, we fail to see how or in what way the

leaving of that question to the jury was prejudicial to the defendant, inasmuch as the jury, in view of their verdict, must have found that the check was not given in full payment. It is true the court, after instructing that, if they found the check given was in full payment, further stated to the jury that it was necessary to further find "that the plaintiff, fully understanding that said check was so tendered and conditioned on defendant's part, accepted said check," before they could find against plaintiff. The instruction requested by appellant necessarily implies that the plaintiff must have accepted the check with the knowledge that it was intended to be in full payment; otherwise the effect of what appellant is contending for would be that one party could make a contract without the knowledge or consent of the other party. If there is any new or additional element in the instruction as given that was not included in the one requested by counsel for defendant, it is to the effect that the jury must find that the plaintiff accepted the check "with the full understanding that the check was tendered and conditioned to be in full payment," but the distinction between *understanding* and *fully understanding* is somewhat difficult to draw and one not likely to mislead the jury.

Plaintiff testified that the writing of March twelfth had been altered after its execution by adding the words "Feed bill excepted, at nine cents a day per head." Defendant requested the court to instruct the jury that the burden of proving such addition or alteration was upon the plaintiff, and that they should not find that such alteration had been made unless clearly established to the satisfaction of the jury beyond a reasonable doubt. The court refused to so charge. This is assigned as error. The requested instruction calls for a greater weight of evidence than is required to establish a fact in civil cases. *Dovich* v. *Chief Con. M. Co.*, 53 Utah, 522, 174 Pac. 627; 17 Cyc. 755 et seq.

Objection is further made that the court in its instructions failed to state the issues to be determined by the jury. That, in our judgment, is the most serious question presented on this appeal.

The court apparently did not attempt in any way to state the issues in any general language, and in fact did not in general or definite terms state to the jury what the issues were. The court began its instructions as follows: "The plaintiff brings this action against the defendant, and for cause of action alleges." It then set out the complaint, the answer, and the reply hæc verba. The court then instructed the jury that the third cause of action had been dismissed and was not to be further considered. No further reference is made to the issues.

Appellant contends that it was the duty of the court to construe the pleadings and to charge the jury respecting the issues of fact to be determined, and relies upon the opinion of this court in the case of *Pulos* v. *Railroad,* 37 Utah, 258, 107 Pac. 241, Ann. Cas. 1912C, 218. In that case the court charged the jury that the amended complaint set forth what the plaintiff claimed and the amended answer set forth the defendant's version, and that both the amended complaint and answer were made part of the instructions, and the jury was referred to such pleadings for the particular statements as to what each party alleged in reference to the controversy. Following that, it appears, a statement was made "in general terms" giving the substance of the material allegations of the complaint and the denials and averments contained in the answer. In that case this court held that the charge involved two erroneous statements. One was that the jury had a right to take the pleadings with them to the jury room, and the other that it was their duty to consult the pleadings and determine for themselves the issues. The judgment was reversed upon that and other errors.

In the instructions under consideration no reference was made to the pleadings as such, and the jury was not instructed to examine the pleadings and from them determine the issues. However, the court made no attempt to instruct the jury respecting the issues further than to copy into the instructions the pleadings in the case. Of necessity the jury, in order to determine the issues, were required to examine the pleadings.

Plaintiff relies upon the holding of this court in *Smith* v. *Columbus Buggy Co.*, 40 Utah, 597, 123 Pac. 580. While it is true that it was there held not to be error for a trial court, under all circumstances, to state the issues in the language of the pleadings, yet, proceeding to discuss and apply the instructions to the facts in that case, it was said:

"Of course, many things may be stated in a complaint that may be admitted or not disputed in an answer; and the same may be true with regard to the answer and the reply thereto. Under such circumstances, it may be misleading to the jury to copy the whole pleadings in stating the issues, because all of the matters ·of fact that are admitted in a pleading or not denied no longer present any issue to be tried by the jury. In this case, however, all the facts relating to the respondent's right of recovery were denied, and the court only copied such portions of the answer as raised some issue in the case."

It is not the desire or intention, under like facts, to overrule or modify the holding.in that case. In the case at bar three distinct causes of action are stated in the complaint. Allegations are made respecting at least two distinct agreements between the parties. The answer denies those allegations and alleges a new contract as an affirmative defense. By the reply the existence of that contract is put in issue. Moreover, is developed at the trial, ·from the plaintiff's evidence, and also from the defendant's evidence, that the contract made in January was not in any way controlling, and was to all intents and purposes out of the case. Either the deal was completed and the cattle delivered under the written bill of sale of March twelfth or under the verbal contract made at the time of delivery of the cattle in April. That was the first and vital question to be determined by the jury. Another important question to be determined was whether the check for $1,666 given to the plaintiff was given and accepted in full settlement. It was the duty of the court to instruct the ·jury and define to them the issues of fact they were required to determine. Merely handing the pleadings to the jury with no statement, either general or specific, does not, in the judgment of the writer, meet the requirements stated by this court in *Pulos* v. *Railroad*, supra, as follows:

"The court in the written charge itself should clearly define the particular issue or issues submitted to the jury, and should specifically state to them the material facts alleged, denied, and admitted in respect of such issues."

See, also, *Baltimore & O. R. Co.* v. *Lockwood*, 72 Ohio St. 586, 74 N. E. 1071; *K. C. F. S. & M. Ry.* v. *Dalton*, 66 Kan. 799, 72 Pac. 209.

We are all agreed that it was the duty of the trial court to construe the pleadings and advise the jury as to the issues of fact to be determined by them. The defend-     6, 7 ant was entitled to have such issues defined and properly submitted to the jury. In the writer's opinion that was not done, and the failure of the trial court to so define and advise the jury as to the issues of fact was prejudicial to the defendant and ought to work a reversal of the judgment. However, my Associates, while not dissenting from the proposition that it was the duty of the court to construe the pleadings and define the issues, are of the opinion that in this case the failure to do so was not prejudicial, at least not sufficiently so to warrant a reversal. The reasons for that conclusion are stated in the concurring opinion written by Mr. Justice THURMAN and appended hereto.

The order therefore is that the judgment of the court below be, and the same is hereby, affirmed, with costs.

THURMAN, J.

I concur with Mr. Justice GIDEON in the order affirming the judgment and in all of his conclusions except that relating to the manner of stating the issues to the jury. As to that I also concur upon the proposition that merely reading to the jury a verbatim statement of the complaint, answer, and reply is not such a statement of the issues as the law contemplates and may be misleading and prejudicial. The better practice in all cases is for the trial court to make a plain and concise statement in its own language of the issues to be determined by the jury, carefully omitting any and all issues that may have been eliminated by the parties themselves or the

court during or before the trial.  But it does not necessarily
follow that the losing party has been prejudiced simply be-
cause the trial court copied in his instructions and read to the
jury the pleadings in the case instead of a statement of the
issues in the language of the court.  Reading the pleadings to
the jury as a statement of the issues may or may not be preju-
dicial.  The burden is on the appellant in the particular case
to point out and show to this court wherein he may have been
prejudiced by the matter of which he complains.  Nowhere
in the exceptions taken, the error assigned, the argument or
brief of counsel, or even in the opinion of Mr. Justice GID-
EON, is there any attempt to point out or suggest wherein or
in what manner the appellant has been prejudiced in the in-
stant case by reason of the form of statement adopted by the
court.  The whole tendency of his opinion, as I read it, is to
cast upon the party disclaiming prejudice the burden of dis-
proving it rather than upon the opposing party the burden of
proving it.

In the opinion of the writer this involves an erroneous con-
ception of the rule by which this court is bound.  It gives
sanction and recognition to the old rule that prejudice is pre-
sumed from error, and that the burden of showing that the
error was without prejudice falls upon the party that dis-
claims it.

Compiled Laws Utah 1917, sections 6622 and 6968, invoked
by Mr. Justice GIDEON in disposing of another assignment
of error, read as follows:

"6622.  The court must in every stage of an action disregard
any error or defect in the pleadings or proceedings, which does not
affect the substantial rights of the parties, and no judgment shall
be reversed or affected by reason of such error or defect."

"6968.  No exception shall be regarded unless the decision ex-
cepted to is material and prejudicial to the substantial rights of
the party excepting."

These sections laid down the rule that harmless errors must
be disregarded.  This, supplemented by the ordinary pre-
sumption in favor of judgments in cases of appeal, undoubted-
ly casts the burden of establishing prejudice on the party
affirming it.

The allegations of the complaint were denied by the answer, and in addition thereto the answer alleged an affirmative defense. This was denied by the plaintiff. The issues were simple. They were not involved. There was nothing to confuse or mislead the jury. The plaintiff relied on the transaction as he alleged it, and the defendant relied on the transaction as he alleged it. Substantially every allegation in both the complaint and answer was controverted by the opposing party.

I am of the opinion that this question comes within the principle declared in *Smith* v. *Columbus Buggy Co.*, a decision by this court referred to by Mr. Justice GIDEON. In that case the trial court incorporated into the instructions to the jury a verbatim copy of the complaint and such portions of the answer as presented the material issues. This was excepted to by appellant and assigned as error on appeal. In disposing of the exception the court, speaking through Mr. Justice Frick, then Chief Justice, said:

"While it is desirable in all cases that the jury, who are laymen and unfamiliar with the rules of pleading, or construction, should, as clearly and as briefly as possible, be told the precise issues that are to be determined by them, yet where the issues are stated in the language of the pleadings, and it is not made to appear that the jury were either misled or confused by the method pursued, the judgment cannot be reversed for the sole reason that the court stated the issues in the language of the pleadings. We can discover nothing in the records before us from which it is made to appear that the appellant was in any way or to any extent prejudiced by the statement of the issues in the manner in which it was done. This assignment must therefore fail."

The court, while not approving of that manner of stating the issues to the jury, nevertheless refused to reverse the judgment on that ground alone. There being no reversible error, the judgment was affirmed.

In the case of *Pulos* v. *Railroad*, also referred to by Mr. Justice GIDEON, the trial court permitted the jury to take the pleadings with them when the cause was submitted, and also instructed them to refer to the pleadings for a particular statement of the issues involved. This court on appeal held that this method of stating the issues was error. The court,

however, before reaching this question, in the course of its opinion, had already sustained an exception of appellant upon another question for which the judgment would have been reversed. Just what the judgment of the court would have been if it had been called upon to reverse the judgment solely on account of the manner in which the issues were stated is not necessary to determine. In that event, however, it would have been the duty of the court to consider the question as' to whether or not the error appeared to be prejudicial. If not, the judgment must have been affirmed notwithstanding the error complained of.

An examination of the instructions given to the jury discloses the fact that the plaintiff was required to establish every fact alleged in his complaint by a preponderance of the evidence. No such burden was imposed upon the defendant notwithstanding he alleged and relied on certain affirmative defenses. For this reason it seems to me that appellant has less cause for complaint than respondent would have had if he had been the losing party.

The judgment of the trial court should be affirmed.

CORFMAN, C. J., and FRICK and WEBER, JJ., concur.