# FARMERS' & MERCHANTS' SAV. BANK v. JENSEN
## et al.

No. 4085.   Decided December 8, 1924.   Rehearing denied February
10, 1925.   (232 Pac. 1084.)

1.  APPEAL AND ERROR—BURDEN ON COMPLAINANT TO SHOW SUBMIS-
    SION OF PLEADINGS TO JURY, WITHOUT CHARGE ON ACTUAL IS-
    SUES, PREJUDICIAL.   Burden is on complainant to show that
    submission of pleadings to jury without charge as to actual
    issues was prejudicial error.[1]

2.  TRIAL—SUBMISSION TO JURY OF PLEADINGS ALLEGING MISREPRE-
    SENTATION, WITHOUT DEFINING PARTICULAR ISSUES OR MATTER
    SUPPORTING EACH, HELD ERROR.   In action by bank on notes,
    defense being alleged fraud and misrepresentation by cashier,
    submission to jury of pleadings, alleging fraud and misrepre-
    sentation, without defining particular issues of fact raised and
    matter supporting each, held error, as allowing jury to deter-
    mine what representations were material as matter of law.[2]

3.  APPEAL AND ERROR—SUBMISSION OF PLEADINGS ALLEGING FRAUDU-
    LENT MISREPRESENTATIONS TO JURY, WITHOUT DEFINING ISSUES
    RAISED, HELD PREJUDICIAL ERROR WHERE QUESTION VERY CLOSE.
    In action by bank on notes against accommodation indorsers,
    defense being alleged fraud and misrepresentation of cashier
    as to purpose of money raised and stability and financial
    soundness of maker, submission of pleadings to jury, without
    specifying material issues actually raised, held prejudicial, in
    view of closeness of question and fact that some of alleged
    misrepresentations are as to fact, others doubtful expressions
    which might be properly submitted, and still others mere ex-
    pressions of opinion.[3]

4.  EVIDENCE—STATEMENTS AS TO AMOUNT OF CAPITAL AND SURPLUS
    OF BANK IMMATERIAL.   In action by bank on notes, admission
    of statements as to amount of capital stock and surplus of
    bank held error, as being immaterial.

---

[1] *Davis* v. *Heiner*, 54 Utah, 428, 181 P. 587.
[2] *Pulos* v. *Railroad*, 37 Utah, 238, 107 P. 241, Ann. Cas. 1912C,
218.
[3] *Stuck* v. *Delta Land & Water Co.*, 63 Utah, 495, 227 P. 791.
    See (1) 4 C. J. p. 914; (2) 38 Cyc. p. 1608; (3) 4 C. J. p. 1031;
(4) 8 C. J. p. 1020; (5) 22 C. J. p. 494; (6) 8 C. J. p. 1020.

5. EVIDENCE—QUESTION RELATING TO ALLEGED STATEMENTS INDUC-
ING SIGNATURE TO NOTE HELD ERROR AS CALLING FOR CONCLUSION
GIVEN IN WITNESS' ANSWER. An accommodation signer of a
note by a sales company to a bank for money borrowed and
used to pay a pre-existing debt to the bank, having testified to
statements of the cashier inducing his signature, but not as to
what he said as to intended use of the money, it was error to
permit him to be asked as to his belief from what the cashier
said was to be done with the money, and to answer it was to
be turned over to the company to buy appliances as needed,
since the question coming as it did, in relation to other matters
testified to, called for a conclusion which he gave in his answer.

6. BILLS AND NOTES—ADMISSION OF STATEMENT OF INDORSER OF
NOTES IN SUIT, THAT HE HAD NOT BEEN REIMBURSED FOR OTHER
OBLIGATIONS HE HAD ASSUMED FOR MAKER, ERRONEOUS. In ac-
tion by bank on notes against accommodation indorsers, ad-
mission of statement that indorser had not been reimbursed
for other obligations he had assumed for maker *held* error.

Appeal from District Court, First District, Cache County;
*M. H. Harris,* Judge.

Action by Farmers' & Merchants' Savings Bank against
Alfred Jensen and others. Judgment for defendants, and
plaintiff appeals.

REVERSED AND REMANDED, with directions.

*A. E. Bowen,* of Salt Lake City, and *E. T. Young,* of Logan,
for appellant.

*J. P. Rich,* of Logan, and *T. D. Lewis,* of Salt Lake City, for
respondents.

WOOLLEY, District Judge.

This is an action brought by the plaintiff and appellant
bank against the defendants and respondents to recover a
judgment upon three promissory notes for $5,000 each, to-
gether with interest and attorney's fees as provided in the
notes, signed by the defendants, the Genter Sales Company
and P. H. Genter, as makers, and payable to the order of
the bank. The complaint, containing three separate causes
of action, is in the usual form of complaints in actions of
this kind, where the notes are not set out in hæc verba. The

amended answer, put in by the defendants jointly, admits all of the allegations of the complaint, except the allegation in each cause of action in regard to attorney's fees, as to which the defendants say the amount claimed is not a reasonable fee, and that they are not liable for any attorney's fee whatever, and sets up affirmatively a defense on the ground of fraud, a counterclaim on the ground or in the nature of conversion, and a defense that there was no consideration for the notes. The counterclaim and the defense of no consideration were taken from the jury by the instructions of the court, so that it will be unnecessary to make further reference to them in this opinion.

There was a verdict for the defendants of no cause of action. The plaintiff made a motion for a new trial, which was overruled by the court, and then brought the case here on appeal from the judgment on the verdict. Numerous errors are assigned and argued in the brief, but only those will be discussed which are deemed to be of controlling importance in the case.

The affirmative defense on the ground of fraud, which is the only part of the pleadings necessary to be set out herein, is in the following language:

"(1)    That the plaintiff, at all of the times alleged in plaintiff's complaint and in this answer, was a bank engaged in the general banking business at Logan City, Cache county, Utah.

"(2)    That the Genter Sales Company at all times herein mentioned was a corporation, organized and existing under and by virtue of the laws of the state of Utah, with its principal office at Logan, Utah, and was engaged in the business of selling farm appliances such as electric pumps, Delco light systems, and other electrical appliances. That it was customary for the said Genter Sales Company, hereinafter called said company, to sell said appliances on time and to take title retaining notes as security for the payment of the purchase price, or the greater part of the purchase price, and sell said notes at a discount. That the said company at all of the times herein mentioned was doing its banking business at the plaintiff bank, and said plaintiff bank purchased a number of said notes and did a great deal of business with said company, and thoroughly knew the general condition and affairs of said company, and had such knowledge long prior to the time the notes sued on in this action were signed by these defendants.

"(3)  That on or about the 24th day of February, 1921, said company was very heavily indebted to plaintiff bank, and said bank advised P. H. Genter, as manager of said company, on or about the first day of November, 1920, and at several other times prior thereto and thereafter, to get other parties interested and get them to take stock in said company, and the said P. H. Genter and the plaintiff herein then and there conspired together to get innocent parties to take stock in the said company and become interested therein and take up the indebtedness to the bank.  That the said defendants are farmers and had no knowledge of bookkeeping or how to ascertain the condition of the said company, and did not know whether or not it would be advisable to invest with the said P. H. Genter and buy stock in said company.  That the defendants Alfred Jensen and M. H. Preece were doing business at the plaintiff bank, and reposed a great deal of confidence in said plaintiff and the officers thereof, and knew that the said company was doing business with the plaintiff, therefore, in order to find out the true condition of said company, went to the plaintiff and asked whether or not it would be advisable to invest any money in the said company, and whether or not it was in a good safe condition.  That on or about the 24th day of February, 1921, said plaintiff met with all of these defendants at their request, and falsely and fraudulently represented to them that the said company was in a good condition, and that these defendants were running no chance whatever in investing in the said company and advancing money on its behalf, and that it was a good business, and that the cashier falsely and fraudulently represented to defendants that he as such cashier would like to be in said company, himself, if he were not tied up with the plaintiff bank, and plaintiff further falsely and fraudulently represented to defendants that the said company had about $18,000 in notes signed by the farmers of this district at the plaintiff's bank, and that some of said notes were past due and had not been paid on account of the condition of the country, that the said notes would have to be discounted and sold at a sacrifice, if these defendants did not sign up some notes and leave them with the plaintiff, and told them that the amount of the notes sued on in this action, to wit, $15,000, was to be used by the said company in purchasing goods and paying other expenses of said company, and any payments made by any of the makers of the said $18,000 in notes was to be applied on the payment of the three notes sued on in this case, that the said defendants then and there believed the representations of the said plaintiff, and believed that the said company was in good condition as represented by it, and were induced to advance money for said company, and sign notes on behalf of the same; said notes being the notes sued upon in this action, and the plaintiff further falsely and fraudulently represented to

these defendants that the said $15,000, represented by the notes sued upon in this action, was to be at the disposal of the said company for the purpose of saving discounts on notes as aforesaid by using the same for purchasing any merchandise that might be necessary for the use of the said company and paying any running expenses that said company might have.

"(4) That at the time the plaintiff represented to these defendants that said investment was a safe investment, and that these defendans would be safe in advancing money for and signing notes on behalf of said company, and that said company was in good condition and had $18,000, in notes with the plaintiff, all of which defendants believed, the said company was indebted to the plaintiff in the sum of $23,000, which the plaintiff fraudulently concealed from the defendants, and there were not $18,000 in notes with plaintiff, owned by said company, or any other sum or amount, except a few worthless notes amounting to $2,000 or $3,000 which the plaintiff held as collateral security, and that the said company was then and there in a bankrupt condition, which the plaintiff then and there well knew, but falsely and fraudulently concealed from these defendants, and said investment was not a safe investment, and it was not intended by the plaintiff that the said $15,000, was to be used for purchasing merchandise and paying immediate expenses of said company, and the said business of said company was being conducted on an improper and unsafe basis, and said company was running behind in a large amount each year and becoming more heavily indebted to plaintiff, all of which the said plaintiff then and there well knew, and the said plaintiff did not intend that the defendants or the said company should have any use whatever of the said $15,000 represented by the notes sued upon in this action, except that the said notes were to be held as collateral security for the indebtedness of the said company to the plaintiff, and that the cashier of said bank knew that neither he nor any other reasonable man would be connected with or make an investment in the company if he knew the real condition thereof, and no part of the amount represented by the notes in question was ever deposited to the credit of the said company or to these defendants, and said defendants received no consideration therefor, but said notes were held by the said plaintiff as collateral security for the amount said company was owing to plaintiff prior to that time.

"(5) That the representations made by said plaintiff regarding the condition of the said company, and all of said representations above set forth, were material to these defendants, and were false and fraudulent, and that said representations were made for the purpose and with the intention of having these defendants believe the same, and were made with the intention of deceiving these de-

fendants. That the said defendants did believe said representa-
tions, and relied thereon, and said representations were made for
the purpose of having these defendants believe the same, and, said
defendants did believe the same and relied thereon to thir damage,
and in acting upon said representations they were ignorant of the
falsity of the same, but reasonably believed said representations to
be true, and that the plaintiff was in a position to know and did
know the true condition, about which it made such representations
to these defendants, and which defendants were not in a condition
to know, and had no other reasonable means of knowing, and that
these defendants had long been acquainted with the plaintiff and
the officers thereof, and reposed a great deal of confidence in it and
asked for the above information as a confidential advisor, but, not-
withstanding said fact, the said plaintiff falsely and fraudulently
concealed the actual facts and true conditions existing in regard to
said company. If these defendants had known the facts and the
real condition of said company, they would not have signed the
notes in question or had anything to do with said company."

It was the duty of the trial court to construe the pleadings
and to charge the jury on the issues. What issues of fact are
raised by the pleadings is a question of law which it is the
exclusive province of the trial court to determine. It is the
province and duty of the court to state specifically to the
jury what issues are raised by the pleadings, and it is erro-
neous for the court to refer the jury to the pleadings to as-
certain for themselves what the issues are between the parties.
The court in the written charge should itself clearly define
the particular issue or issues, submitted to the jury,
and should specifically state to them the material facts          1
alleged, denied, and admitted in respect of such issues.
*Pulos* v. *Railroad,* 37 Utah, 238, 107 P. 241, Ann. Cas. 1912C,
218. But upon appeal prejudice will not be presumed sim-
ply from a showing that the trial court failed to construe
the pleadings and to charge the jury upon the issues. The
burden rests upon the complaining party to go further and
point out to this court wherein and in what respect he has
been prejudiced by such error on the part of the trial court.
*Davis* v. *Heiner,* 54 Utah, 428, 181 P. 587.

When tested by this standard the instructions in the case
at bar appear not to measure up to the requirements of the
law. The charge as given embraces 20 instructions. In Nos.

1, 2 and 3 the court, with some slight elisions in the language, sets out copies of the complaint, the amended answer, and the reply; in No. 4 he tells the jury that the counterclaim and the reply thereto have been dismissed, while in No. 5 he withdraws from the jury the defense of no consideration. In No. 9 he says that, in determining whether or not any material misrepresentation or concealment was made, the jury should take into consideration all the facts and circumstances in the case, the nature of the transaction, the relationship of the parties, and their respective knowledge of the facts. In No. 10 he tells them in the language of one of the plaintiff's requests that the law imposes upon every person the duty of exercising reasonable prudence and diligence in protecting himself against imposition and improvident bargaining, and that, if they find that the defendants were stockholders in the Genter Sales Company and were acting as officers thereof at the time of the alleged fraud, that they had the right and privilege to examine for themselves into its condition, to examine its records to ascertain the extent of its liabilities and the extent of its business, and that, if they did not avail themselves of opportunities of knowledge which were open to them, or if they made but casual or superficial examination of sources of knowledge which were readily at hand, that they did not use ordinary care and caution, and that the loss which they sustained resulted from such lack of care, then the verdict should be for the plaintiff. In No. 11, also given at the plaintiff's request, he states the abstract legal proposition that representations, to be the basis of legal liability, must be representations with respect to existing or past facts, and not as to future speculations or mere expressions of hope, expectation, or opinion, and, concretely, in case they believe that Benson, the cashier of the bank, stated that he thought the business of the Genter Sales Company was a good business and one that would make money for its stockholders, such statements would be expressions of opinion, and could not be legally relied upon by the defendants, unless Benson in making such statements, did not believe them to be true, and made them with intent to deceive. Nos. 12 and 13 relate to the

matter of attorney's fees, and all subsequent thereto are of a general nature such as are usually given in all civil cases and have no bearing upon matters involved in this appeal. Nos. 6, 7 and 8 are as follows:

"(6)   The burden is upon the plaintiff to prove by a preponderance of the evidence all the essential allegations of their complaint, but, in this connection, you are instructed that the making, execution, and delivery of the notes, and the fact that the same are not paid, is admitted by the defendants, which satisfies plaintiff's burden as to those matters.   The defendants seek to escape liability on their notes on the grounds of alleged fraud.   The burden is upon the defendants in this case of proving the alleged fraudulent representations by a preponderance of the evidence.   Fraud cannot be found from mere conjecture or suspicion.

"(7)   Fraud is any act, concealment, or omission used to cheat or deceive another.   In order for a party relying on fraud to succeed he must prove by the preponderance of the evidence a material representation, that the same was false; the knowledge by the speaker that it was false and his intent that it should be acted upon in the manner reasonably contemplated, the hearer's belief of such representation, and his reliance and action thereon to his injury.   So that, unless you find from a preponderance of the evidence in this case that the plaintiff, through its agents, made one or more of the representations alleged in defendants' answer, that the same were false, that they were material, that the said agent knew the same to be false and made the same with the intent to induce the defendants to sign the note sued upon, that defendants believing such false representations to be true and relying thereon signed the notes in question, then the defendants have failed to prove their allegations of fraud, and your verdict should be in favor of the plaintiff.

"(8)   The concealment of a fact which one is bound to disclose may constitute a representation that such fact does not exist, so that, if you believe from a preponderance of the evidence, bearing in mind all the facts and circumstances of this case, that the bank or its officers intentionally concealed any material fact as alleged in the answer, for the purpose of inducing the defendants to sign the notes in question, and that defendants did not know the facts concealed, and on account thereof they were induced to sign the notes sued upon which they would not otherwise have done, then your verdict should be for the defendants."

It is apparent that the court made no attempt to tell the jury what issues are raised by the pleadings with reference to the defense of fraud, or what are the alleged misrepresen-

tations and facts fraudulently concealed, or which of them are actionable as matter of law, and which are not actionable, except the partial attempt as shown in instruction No. 11. There are other alleged representations in the answer which fall within the same category as those mentioned in that instruction. The court merely copied the pleadings into the charge and then as to this defense, told the jury that the burden was upon the defendants to prove the alleged fraudulent representations by a preponderance of the evidence, and that unless they found that the plaintiff made one or more of the representations alleged in the answer, that the same were false and so forth, the verdict should be for the plaintiff thereby leaving it to the jury to determine for itself what issues were raised by the pleadings, which of them were material and important, and making it necessary for the jury to search the answer to ascertain what representations were alleged therein and what facts were alleged to have been concealed, and permitting, if not requiring, the jury to say which among those alleged misrepresentations were actionable and which were not actionable. In other     2 words, as the instructions stand, they permit the jury to decide law points in the case as well as questions of fact, and to the extent that they do this the court has surrendered its proper functions to the jury. The court should have pointed out to the jury, specifically, just what alleged fraudulent representations and facts alleged to have been concealed it was necessary, for the defendants to prove by a preponderance of the evidence in order to defeat the right of the plaintiff to a verdict upon the facts admitted in the pleadings. Upon the authority of *Pulos* v. *Railroad*, and *Davis* v. *Heiner*, supra, the instructions in this case must be held to be erroneous, because they do not properly state the issues to the jury nor sufficiently construe the pleadings.

Was the error above mentioned so prejudicial as to require a reversal of the judgment and the granting of a new trial? This question must be answered in the affirmative in view of the nature of the case, the condition of the pleadings, and the state of the evidence. The defendants seek, upon a claim

that their signatures were obtained by misrepresentations made to them by the cashier of the bank, to escape liability upon notes in a large sum which they admittedly signed merely as an accommodation for the Genter Sales Company. The president, manager, and moving spirit in that company was one P. H. Genter. It developed some months after the date of the transaction here involved that Genter had been engaged in dishonest and fraudulent practices in his management of the affairs of his company, which, combined with the general financial depression then prevailing among farmers, to whom it sold its wares, resulted in the collapse of the enterprise and in rather heavy monetary losses to the defendants, who were stockholders therein, and two of whom had backed the company by signing other notes in its behalf. Prior to his exposure, Genter seems to have enjoyed the trust and confidence of the bank, or at least of its cashier, where his company did a considerable volume of business and was the recipient of somewhat unusual credit privileges. Add to this the fact that the company owed the bank, at the time the notes were signed, the sum of $16,300, and that Genter had been called upon to reduce the debt or furnish security for its payment, and had been advised that the bank would be satisfied if the defendants would become personally liable therefor, and we are confronted with a situation wherein very slight evidence may be sufficient, in a jury's estimation, to support a charge such as is made in this case. From the very nature of the case and the relation of the parties concerned, it is a situation wherein the court ought to be, and must necessarily be, very careful to confine the jury strictly to its functions of determining the facts, because otherwise there is always the danger that they will write into their verdict their own and perhaps erroneous views as to the law, and their own interpretation of the pleadings.

Cases are frequently reversed because the trial judge has invaded the province of the jury, but it is no less mischievous, and is just as apt to result in an unfair trial, in a close case of this kind, for the court to permit the jury to discharge the functions of the bench. The pleading in which the fraud is set

out is somewhat complex and involved. Besides matters of explanation and inducement, it contains much that is wholly immaterial for any purpose, and which tends only to confuse. It contains a charge that the bank and Genter entered into a conspiracy to get innocent persons to purchase stock in the company and thereby furnish money with which to pay the debt to the bank, and alleges that Jensen and Preece went to the cashier and asked whether or not it would be advisable for them to invest money in the company and whether or not the company was in a good safe condition. It requires a more careful and painstaking study of the pleading than a jury of laymen, however capable they may be, would probably give to the matter to determine the connection between the advice which Benson gave and the representations which he made to those two defendants relative to their purchase of stock in the company and the fraud which he is alleged to have perpetrated upon the three defendants to induce them to become signers of the notes. The allegation as to the conspiracy was not supported by any evidence, while the allegations as to the advice given and representations made by Benson to Jensen and Preece relative to their purchase of stock in the Genter Sales Company furnish no basis whatever for a defense to this action; the purchase of the stock and the signing of the notes being two separate and distinct transactions. And yet these issues were submitted to the jury under the instructions as given.

Some of the alleged representations are not actionable in and of themselves, being mere expressions of opinion and not statements of fact; some fall within the class of doubtful expressions, such as are mentioned in *Stuck et al.* v. *Delta Land & Water Co.*, recently decided, 63 Utah, 495, 227 P. 791, and are therefore proper to be submitted to the jury, and some are clearly statements of fact, and are actionable. Yet the jury is permitted as the instructions stand, to rest a verdict upon a finding that any one of them was made, except those mentioned in instruction No. 11; the other elements of fraud being present. The case upon the facts as shown by the evidence, even taking it in the light most favorable to    3

the defendants may be said to be a close one. After a careful reading of the evidence as reported in the transcript and as reflected in the abstract, the writer is of opinion that this court would not be warranted in holding as matter of law that it is not sufficient to support a verdict for the defendants; but neither can it be said in fairness that such a verdict is the only one which might be justly found under the evidence. In the light of the situation which I have attempted to set forth, perhaps at too great length, I am of opinion that the failure of the trial court properly to define the issues to the jury and to construe the pleadings was prejudicial error. It cannot be said that the verdict would or ought to have been the same if proper and sufficient instructions had been given in this connection. The plaintiff, therefore, upon this ground ought to be awarded a new trial.

The rules of evidence seem to have been violated in several instances, but perhaps not more often than is usual in hotly contested cases. Many of the errors assigned and much of the discussion in the briefs relate to this subject. For that reason, and because the case must be tried again, and not because any one or more of such errors, if they stood alone in the case, would be deemed sufficiently prejudicial to require a reversal, it is necessary that we advert to the matter here.

At the beginning of their case in chief the defendants called E. Taft Benson, as their witness, and, after he had answered preliminary questions designed to show that he was cashier of the plaintiff bank during the period under investigation, counsel put to him this question in the direct examination: "What was the capital stock of the bank during the years that you were cashier?" To which the plaintiff objected on the grounds that it was incompetent, not the best evidence, and immaterial. The objection was overruled, exception noted, and the witness answered that the capital stock was $100,000, and the surplus $16,000. The objection should have been sustained. The facts established by the answer were clearly immaterial to any issue in the case.

Again, the defendant Morrison, testifying in chief, upon direct examination, after having related what was said by

Benson, the cashier of the bank, and the other persons present, at a certain meeting of the parties whereat it is claimed the fraud was perpetrated was asked, in reference to the money which was being borrowed from the bank in behalf of the Genter Sales Company upon the notes in suit, this question: "From what Mr. Benson said, what did you believe was to be done with the $15,000?" Plaintiff's counsel objected on the grounds that it was irrelevant, immaterial and incompetent. Objection was overruled, and the witness answered: "It was to be turned over to the Genter Company for him to purchase appliances that they wanted to buy, as they needed them."

This objection also should have been sustained. What Benson said upon that occasion was pertinent; what the witness believed out of what Benson said was likewise pertinent under the issues. If Benson had said, according to the testimony of this witness, that the $15,000 was to be used by the company in the purchase of appliances as they were needed, it would have been proper for counsel to ask and for the witness to answer whether or not he believed and relied upon such statement. But that is not what this witness testified, Benson said. The question, being framed as it was, and coming as it did in relation to other matters to which the witness had testified, called for the conclusion of the witness, and the witness gave a conclusion as his answer. It was especially harmful for the witness to be permitted to answer as he did here, because one of the sharpest conflicts in the case is about the question whether Benson represented to the defendants that the money which was being borrowed upon these notes was to be used by the company to pay a pre-existing debt to the bank or was to be used to purchase new supplies for the prosecution of the company's business.

The defendant Jensen, testifying as a witness in behalf of himself and the other defendants, in the redirect examination, in order to explain a statement which he had made in the cross-examination, was permitted to say that he had signed a number of notes to other persons in behalf of the Genter Sales Company after the date upon which he signed the notes

sued upon in this case, and then, over timely and proper objection, he was permitted to testify that he had not been reimbursed for those obligations which he had paid for that company. The ruling upon this objection was erroneous. The fact thus elicited was immaterial to any issue in the case; it did not tend to explain, modify, or make clear any matter which had been developed upon cross-examination.

There are a number of other assignments based upon rulings upon objections to the admission of evidence; but the foregoing are the only ones which seem to possess any merit. It would extend this opinion beyond proper limits to attempt a discussion of the others. Counsel have cited no cases or authorities in the briefs upon the points of evidence above mentioned. For that reason, and also because the rules of evidence involved will readily suggest themselves to every lawyer, I refrain from making reference to texts or cases in support of the conclusions announced upon this branch of the case.

There are other assignments made and argued in the briefs. In so far as there is merit in those which relate to the instructions as given, and in the refusal of the court to give requested instructions, the matter will be corrected upon another trial when the court gives proper instructions upon the issues. One of them relates to an act of misconduct upon the part of Mr. Rich, of counsel for defendants, who, in his address to the jury, transcended the limits of proper argument by making reference to facts not in evidence. The court failed to admonish the jury to disregard the statement, although Mr. Lewis, the associate of Mr. Rich, suggested to the court that such was the proper course to be pursued. Appellant assigns this as one of the grounds for a new trial. Respondents confess the impropriety of the remark, but argue that the incident itself and the ruling of the court do not constitute prejudicial error. It is unnecessary for this court to decide the point, as the case will have to be reversed upon other grounds. Much of the argument relates to the claim that the evidence is insufficient to support the verdict, and that the verdict is

contrary to law. It would serve no good purpose to set out the evidence in full, or even a synopsis of it. It must suffice to say, as has already been suggested in another connection, that the writer is of opinion that the evidence is sufficient to support a verdict for the defendants, if a jury, under proper instructions, should find for them. No small part of the argument in the briefs under this head goes more to the weight than to the sufficiency of the evidence. To the extent that legal propositions are raised and discussed, we can do no more than to say that they have been duly considered, and that in our opinion they are not sound, when applied to the facts in this particular case.

Upon the whole record, for the reasons stated, the judgment ought to be, and therefore is, reversed, and the cause remanded to the district court of Cache county, with directions to grant a new trial and to proceed in accordance with the views herein expressed. Appellant to recover costs.

THURMAN, GIDEON, FRICK, and CHERRY, JJ., concur.

WEBER, C. J., did not participate herein.