BOSWELL *v.* BARNHART.

1. In the trial of an action by a widow for the homicide of her husband while confined in a chain-gang, it was not error to reject evidence offered by the defendant to the effect "that the plaintiff was to all appearances as well or better provided for now than before deceased went to the chain-gang; that she and her children were then constantly in rags and in destitute condition; that deceased, before he went to defendant's chain-gang, was constantly in criminal scrapes, often in jail under other criminal charges, and when out was at work to defray expenses of defending himself against such charges."
2. A "chain-gang boss" is not a fellow-servant of a "chain-gang prisoner," and the employer of the "boss" is responsible for wrongful or negligent acts on the part of the latter, by which a prisoner is deprived of his life.
3. If there was any error in charging or omitting to charge with reference to the measure of damages, it was cured by the reasonableness in amount of the verdict rendered.
4. A jury, when there are sufficient facts in evidence as to the age, health, physical condition, habits, etc., of a given person, may form a reasonable estimate as to the value of the life of such person, without resorting to the standard mortality tables usually introduced in evidence in cases of this kind.
5. The evidence warranted the verdict, and there was no error in denying a new trial.

August 5, 1895.

Action for damages. Before Judge JENKINS. Greene superior court. August term, 1894.

H. T. LEWIS, for plaintiff in error.
SAMUEL H. SIBLEY, *contra.*

SIMMONS, Chief Justice.

Louisa Barnhart sued Boswell for damages from the homicide of her husband, who she alleged had been convicted of a misdemeanor and sentenced to labor in the chain-gang, and while in the charge of Boswell, who for private gain had established a convict camp, had been subjected to cruel treatment, exposure, neglect, excessive and unreasonable tasks, etc., by reason of which he died. There was a verdict for the plaintiff for $750, and the defendant made a motion for a new trial, which was overruled, and he excepted.

1. It is complained that the court erred in refusing to allow the defendant to prove "that the plaintiff was to all appearances as well or better provided for now than before deceased went to the chain-gang; that she and her children were then constantly in rags and in destitute condition; that deceased, before he went to the chain-gang, was constantly in criminal scrapes, often in jail under other criminal charges, and when out was at work to defray expenses of defending himself against such charges." We think this testimony was properly excluded. Under the act of Oct. 27, 1887, amending §2971 of the code, the plaintiff was entitled to recover the gross value of her husband's life, without regard to whether she had previously received anything from him or not, and without regard to what his personal expenses may have been (Acts 1887, p. 43). The more prosperous condition of his family after his death was clearly irrelevant.

2. It is complained that the court erred in charging: "If the deceased worked under the direction of one Culbertson as the employee of defendant, then the acts of Culbertson, while acting in behalf of defendant and within the scope of his employment, would be in law the acts of the defendant, and he, the defendant, would be liable therefor to the plaintiff, if they were wrongful

acts and resulted in injury to Barnhart and caused his death, provided the death of Barnhart resulted in.pecuniary damage and loss to the plaintiff, and provided further, such acts were sued on and set out in the declaration." It was contended that Culbertson and the deceased were fellow-servants, and consequently there could be no recovery of the master for the wrongful acts of Culbertson. There is no merit in this contention. Where the service is made compulsory by law, the relation of fellow-servant does not exist. (See McKinney on Fellow-Servants, §20; Smith v. Steele, 32 Law Times Rep., New Series, 195). The ground upon which a master is relieved from liability to a servant for injuries resulting from the negligence of a fellow-servant is, that the servant when he enters the employment of the master impliedly contracts to assume the risk of such negligence, as one of the risks incident to the service, and that his compensation is fixed with reference to this; and clearly this reason cannot apply in the case of one not voluntarily in the service, but merely a prisoner serving out his sentence for a violation of the law. Indeed it can hardly be seriously contended that a chaingang "boss" is in any sense a fellow-servant of a prisoner working under him. The "boss," while acting in that capacity is the. *alter ego* of his employer, and the latter is responsible for any wrongful or negligent acts on the part of such employee by which a prisoner is deprived of his life. Nor is it necessary, as contended by counsel for the plaintiff in error, that such wrongful or negligent acts should be criminal in their nature, in order to render the employer responsible. The act of 1887, *supra*, declares that the word "homicide," as used therein, shall be held to include all cases where the death of a human being results from a crime or from criminal "or other negligence."

3. If there was any error in charging or omitting to

charge as to the measure of damages, it was cured by the reasonableness of the amount of the verdict rendered.

4. It was not essential that the jury, in order to form an estimate as to the value of the life of the deceased, should have before them the standard mortality tables usually introduced in evidence in cases of this kind. On this subject JACKSON, C. J., speaking for a majority of the court in the case of *Savannah, Florida & Western Ry.* v. *Stewart,* 71 *Ga.* 446, said: "I do not think that there is any Procrustean rule in the mode of estimating the value of a life. The age of a man, the health he enjoys, the money he is making by his labor, his habits, are data from which the jury may argue how long he will probably live and work, and what his life is worth to his wife in its pecuniary value. I know of no law which requires tables of the probable length of life and its probable worth to be introduced. They may be a useful circumstance, but are not conclusive or absolutely essential." In the present case there was evidence that the deceased was 38 or 40 years old at the time of his death, and that when he was sent to the chain-gang he weighed 195 pounds, was able-bodied, and according to the testimony of several witnesses, was worth about $100 a year as a laborer. This evidence furnished a sufficient basis for an estimate as to the probable value of the life of the deceased.

5. The verdict is amply sustained by the evidence, and there was no error in denying a new trial.

*Judgment affirmed.*