In re Estate of Joseph Thompson.

Everett L. Thompson et al., Appellees, v. Johns. Thompson et al., Appellants.

No. 40560.

February 10, 1931.

*Cornell & Lowenberg* and *Jaques, Tisdale & Jaques,* for appellants.

*Chester W. Whitmore* and *Lloyd L. Duke,* for appellees.

Morling, J.—The evidence is elaborate, and presents many facts and circumstances upon which the parties respectively relied in support of their contentions. Many legal questions were presented to the trial court for rulings, resulting in 22 specifications of error. Among these are contentions that the evidence was insufficient to warrant submission to the jury of either of the grounds of contest. A protracted study of the record convinces this court that the proponents should have a new trial; that, on new trial, some, at least, of the alleged grounds of complaint and criticism are likely to be eliminated; that the evidence on new trial may be quite different; and that the expression of an opinion as to the sufficiency of the evidence now before us to support the

two special findings or general verdict would be premature and inadvisable, as would be a discussion of a number of other questions presented in the assignments of error. For these reasons, this court considers it best to determine but three of the assignments of error.

I. The trial court, in charging the jury, said to them:

"Contestants, by way of contest and for objections to the probate of the said will, allege: * * * That they deny said Joseph Thompson signed said instrument intelligently and knowingly, understandingly, and comprehending what he was doing, and the import thereof. That they aver that the mind of said Joseph Thompson was at such time so disordered and unbalanced that he did not comprehend, and was mentally incapable of comprehending, the nature and extent of his property and the just and natural claims of contestants, as his children, to his consideration in such an important transaction, and that he did not then know what he was doing. That he was not of sound and disposing mind and memory at such time. That he was then, and for a long time prior thereto had continuously been, mentally incompetent, and so disqualified to understand the nature and extent of his property, or to intelligently and comprehendingly conduct his own affairs, and was mentally distracted and insane, obsessed with hallucinations and delusions, which, without justice, poisoned his mind against contestants, and was without sufficient mind, memory, intelligence, or understanding to comprehend and fairly appraise the just claims upon him of his children, the contestants, he thus practically disinherited, or to apprehend the value of his property, amounting to some $50,000, and for such reasons did not grasp the meaning of the act he was thus undertaking, or the unwarranted favoritism and inequitable advantage he was thus attempting to confer upon three of his blood at the expense of six others, equally entitled in justice to share in his consideration; the six thus practically disinherited being possessed substantially of no more property than the three upon whom he would thus confer the bulk of his estate; and the six thus practically disinherited having, during the life of each, been uniformly faithful and dutiful to and considerate of and respectful to the common father, and had not received from him any property or advantage prompting or warranting any such inequality

in distribution, and had not been guilty of any such acts as from a moral point of view would justify this father in so favoring three of his children at the expense of the six others, contestants; the three respondents being in no more necessitous or dependent position than the six contestants thus practically disinherited. That the said instrument is further void and of no legal effect because of the fraud and undue influence of each of said respondents in persuading said Joseph Thompson to be party to such scheme and instrument, and so substituting their will for his in its purported execution.

"Wherefore, contestants pray the order of this court denying the admission of said instrument to probate as and for the last will and testament of said Joseph Thompson, deceased."

This recital is substantially a copy of contestants' objections to probate. Thereby, and by incorporating them in the instructions, the contestants got before the jury, in the guise of an instruction and a written statement by the court, their censorious recital of testator's alleged mental obsessions and delusions, his want of intelligence, his unfatherly conduct and favoritism, his attempt to confer upon proponents the share of his property which in justice should have been given to contestants, his alleged practical disinheritance of contestants, and their necessities and unrewarded faithfulness.

The grounds of contest were simple: (1) That the testator was not possessed of sufficient mental capacity to make a will; and (2) that the will was the product of the exercise of undue influence and of the practice of fraud upon him. But as these grounds were laid by the court before the jury, they were such as to constitute a subtle denunciation of testator and of proponents, surcharged with invective and inflammatory assertions, combined with an emotional plea for sympathy. The instructions were thus made to serve as an advocate's plea, and, coming from the court in this manner, one-sided, after the conclusion of the arguments, and taken to the jury room would, not unnaturally, be given by the jury weight superadded to the argument which contestants had made. This instruction was not only confusing and misleading,—an indulgence in a practice which we have repeatedly condemned (*Peet Stock Rem. Co. v. Bruene,* 210 Iowa 131, and cases there cited),—but in its effect it was an appeal to the emotions, to prejudice against proponents, and to sympathy

for contestants. The statement of the grounds of contest was in improper form as a pleading. Much more was it improper as a statement of contestants' legal grounds of resistance to the probate of the will to be determined by the jury.

II. The will was made May 28, 1929. John, the older of the sons by the first marriage, and one of the proponents, was married February 12, 1908, and shortly after, moved to New Mexico.  While there, he was apparently in need of, asked for by letters, and received from testator, assistance in the form of numerous remittances. This son was called as a witness for contestants on this subject. He testified in his direct examination that he was married February 12, 1908; that, while he was in New Mexico, he had a daughter born. Counsel for contestants then asked him, ''Now about what was the date?'' and over objection he was required to answer. His answer was, ''August 4, 1908.'' The daughter was later a witness for proponents. The date of her birth was wholly immaterial. The only purpose that could be served by proving that this daughter was born in less than six months after the marriage of proponent would be to arouse prejudice against the proponent or against his family, especially his wife and daughter.

III. The letters written by John to testator while he was in New Mexico in 1908 and 1909, soliciting assistance, were received in evidence. Proponents requested the court to charge the jury that those letters and the oral testimony regarding the writing of them did not tend to show unsoundness of mind of testator on May 29, 1929, or the exercise of undue influence in procuring the execution of the will. The request for instruction was refused. The letters were merely solicitations— pleas for help. They manifested the existence of no influence whatever on testator, except the influence of the plea of a needy child. Written more than 20 years before, they could have no possible bearing upon the testator's mental capacity or the exercise of undue influence upon him at the time the will was made. Evidence of the fact that advances had been made would have a bearing on the question whether the will resulted in an equitable distribution of the testator's property,—a fact which might properly be taken into consideration, and might be proved; but the letters had no relevancy whatever to the claim of mental weakness

or incapacity or the perpetration of a fraud 20 years later. The request for instruction should have been granted.—*Reversed.*

FAVILLE, C. J., and EVANS, KINDIG, and GRIMM, JJ., concur.