## SHIELDS v. UTAH LIGHT & TRACTION CO.

No. 6157.   Decided September 13. 1940.   (105 P. 2d 347.)

*Hougaard, Shields & Shields,* of Salt Lake City, for appellant.

*Bagley, Judd, Ray & Nebeker,* of Salt Lake City, for respondent.

JONES, District Judge.

This is an appeal from a money judgment in a damage action resulting from a traffic accident which caused death.

The accident took place on one of the main thoroughfares of Salt Lake City. The hour was 6:30 a. m., the weather fair, the streets dry, and only the two vehicles which collided were in the vicinity. The deceased was traveling west on his motorcycle at about 30 or 35 miles per hour. The bus was moving eastward at approximately 15 miles per hour. Both vehicles approached a semaphore controlled intersection showing "go" at about the same moment. The collision took place over on the north half of the street while the bus was executing a left turn. Respondent's theory was that the bus was cutting the corner, did not have the right of way, no signal was given, it was going too fast, and was not being operated under proper control. Appellant disputed these contentions and alleged that the deceased was guilty of contributory negligence.

In instructing the jury the trial court included therein substantial copies of the pleadings of the parties. Instruction number one which set forth the allegations of the complaint occupies more than ten printed pages of the abstract. Sub-paragraphs four and five of this instruction (being the identical portions of the complaint) read as follows:

"(4) That at all times herein mentioned there were in full force and effect in Salt Lake City, Utah, certain ordinances, as follows, to wit:

"Sec. 1372. Vehicle Turning Left at Intersection. (c) The driver of a vehicle within an intersection intending to turn to the left shall yield to any vehicle approaching from the opposite direction, which is within the intersection, or so close thereto, as to constitute an immediate hazard, but said driver having so yielded and having given a signal when and as required by law, may make such left turn, and other vehicles approaching the intersection from said opposite direction shall yield to the driver making the left turn.

"Sec. 1374 (as amended May 3, 1935).

"(2) A signal of intention to turn right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning.

"(5A) Left hand turn arm extended horizontally.

"Sec. 1370. The driver of a vehicle intending to make a left turn shall turn as near as possible to the right of the center of the street upon which he is proceeding where the same crosses the crosswalk and into the intersection, and to proceed so as to enter the street into which he is turning as nearly as possible to the right of the center of the same where it passes the crosswalk and enters the intersection.

"(5) That at all times mentioned in said complaint there was likewise in full force and effect Revised Statutes of Utah 1933, which contained the following sections, to wit:

"Right Of Way 57-7-31. At Intersections. * * *

"The driver of a vehicle within an intersection intending to turn to the left shall yield to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but such driver having so yielded and having given a signal when and as required by law may make such left turn, and other vehicles approaching the intersection from the opposite direction shall yield to the driver making the left turn.

"57-7-28. Turning at Intersections. * * *

"(2) Approach for a left turn shall be made in the lane for traffic to the right of and nearest to the center line of the highway, and left turn shall be made by passing to the right of such center line where it enters the intersection and upon leaving the intersection by passing to the right of the center line of the highway then entered.

"(3) Approach for a left turn from a two-way street into a one-way street shall be made in the lane for traffic to the right of and nearest to the center line of the highway and by passing to the right of such center line where it enters the intersection.

"57-7-29. Departure from Direct Line of Travel—Signals.

"The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and, if any pedestrian may be affected by such movement, shall give a clearly audible signal by sounding the horn, and whenever the operation of any other vehicle may be affected by

such movement shall give a signal as required in this section plainly visible to the driver of such other vehicle of the intention to make such movement.

"The signal herein required shall be given either by means of the hand and arm in the manner herein specified, or by an approved mechanical or electrical signal device, except that when a vehicle is so constructed or loaded as to prevent the hand and arm signal from being visible both to the front and rear the signal shall be given by a device of a type which has been approved by the state road commission.

"Whenever the signal is given by means of the hand and arm the driver shall indicate his intention to start, stop or turn by extending the hand and arm horizontally from and beyond the left side of the vehicle." (This section was amended by chap. 48, Session Laws 1935.)

### Instruction number four is as follows:

"The foregoing instructions are not to be considered by the jury as a statement on the part of the court of the facts as proved in this case, but simply as a recital of what the plaintiff and defendant respectively claim to be the facts. Where it is stated that a party admits certain facts, you are to take such facts as established and proved, beyond this you are not to draw any conclusions as to the facts from a mere recital of the claims of the respective parties as hereinbefore set forth. It is solely and exclusively for the jury to find and determine the facts, and this they must do from the evidence, and having done so the jury must then apply to the facts the law as set out in these instructions."

### The first paragraphs of instructions numbered ten, eleven and twelve are as follows (the last paragraphs of these instructions make specific applications of the propositions set forth in the first paragraphs):

"Number 10. You are instructed that it is provided by the laws of the State of Utah that the driver of a vehicle within an intersection intending to turn to the left shall yield to any vehicle approaching from the opposite direction which is within the intersection, or so close thereto as to constitute an immediate hazard.

"Number 11. You are instructed that it is provided by the laws of the State of Utah that no person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety and then only after giving an appropriate signal, and that a signal of the intention to turn to the left shall be given

continuously during not less than the last 100 feet traveled by the vehicle before turning; that when a left hand turn is about to be made the signal shall be given by the hand and arm extended horizontally or by a signal lamp or signal device of a type approved by the state road commission, but when a vehicle is so constructed or loaded that a hand and arm signal would not be visible both to the front and rear of such vehicle then said signal must be given by such lamp or device.

"Number 12. You are instructed that it is provided by the laws of the State of Utah that the driver of a vehicle intending to turn at an intersection shall do as follows: Approach for a left turn shall be made in the lane of traffic to the right of and nearest to the center line of the highway, and the left turn shall be made by passing to the right of such center line where it enters the intersection, and on leaving the intersection by passing to the right of the center line of the highway then entered."

From the foregoing is will be observed that while the court cautioned the jury that "the foregoing instructions [referring to the pleadings] are not to be considered by the jury as a statement on the part of the court of the facts as proved in this case, but simply as a recital of what the plaintiff and defendant respectively claim to be the facts," yet in a following instruction the attention of the jury is specifically directed back to the only quoted copy of certain statutes and ordinances which appears in instruction one, in the following language:

"Elsewhere in these instructions certain laws relative to motor vehicle traffic are set forth" etc.

From this point of view the jury is told that the foregoing "merely set forth the claims of the parties as to the facts" but that this same instruction contains the law. Moreover, it must be borne in mind that the plaintiff by copying into her complaint certain sections of our statute (with the hope, no doubt, that the trial judge would include the same in the instructions relating to the pleadings) has been able to secure, in effect, an emphasis upon certain propositions of law as against others which are entitled to equal weight. On this theory respondent caused portions

of the city ordinances to be read to the jury as well as certain identical sections of the statute in addition to having the court (further on in the instructions) repeat these laws in substance together with an explanation of just how these propositions were to be applied to the facts. The reiteration of given propositions to the jury in the instructions does not have judicial approval: 1 Blashfield on Instructions to Juries, § 108; 2 Bancrofts Code Practice, 1145; Randall's Instructions to Juries, § 416; *Alaska Steamship Co.* v. *Pacific Coast Gypsum Co.,* 78 Wash. 247, 138 P. 875; *Schroeder* v. *Lodge,* 92 Neb. 650 139 N. W. 221, Ann. Cas. 1914B, 1173; *Chicago, Milwaukee & St. Paul R. Co.* v. *Alexander,* 47 Wash. 131, 91 P. 626; *Kahl* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* 125 Ill. App. 294; *Munsey* v. *Marnet Oil & Gas Co.,* Tex. Civ. App., 199 S. W. 686, 687.

There is one other matter in connection with the reading of the pleadings to the jury as part of the instructions which might be mentioned here. In sub-paragraph 9 of instruction one the jury is advised (by way of setting forth just what plaintiff contended the facts showed) that at the time of the death of the deceased (as a result of the accident in question) he was an "employee of the Tooele Valley Railway Company in Salt Lake City, Utah, and was earning a salary of $77.50 a month, and was promised by said employer, and upon such promise it is therefore alleged that his salary would rapidly increase until he would be earning approximately $200.00 per month." Appellant makes the point that there is no testimony in the record to sustain the last phrase of the above quotation. Respondent concedes that there is no testimony as to the exact amount of the possible raise in salary but points to the statement of one of the officers of the Tooele Valley Railway Company to the effect that the deceased's opportunity for advancement in pay and position was "very good." This being true the trial court should have deleted the reference to the $200 item from the instruction, for, in setting forth the claims of the parties to the jury, only that portion of the

pleadings on which evidence had been introduced, should be mentioned at all, although the reading of the pleadings to the jury is generally condemned. Randall's Instructions to Juries, § 404; *Hammer* v. *Liberty Baking Company*, 220 Iowa 229, 260 N. W. 720; In re Thompson's Estate, 211 Iowa, 935, 234 N. W. 841; *Welton* v. *Iowa State Highway Commission* 211 Iowa 625, 233 N. W. 876, 877; *Smith* v. *Columbus Buggy Co.*, 40 Utah 580, 123 P. 580.

Respondent tacitly admits that a verbatim reading of the pleadings to the jury as a part of the instructions is not the best procedure but insists that prejudicial error has not been committed when one considers the entire charge of the trial court together with Sections 104-14-7, 104-39-3, R. S. U. 1933, as construed by this court in *Loofborrow* v. *Utah Light & Railway Co.*, 31 Utah 355, 88 P. 19; and in *Davis* v. *Heiner*, 54 Utah 428, 181 P. 587. Quotations from the separate opinions of Justices Gideon and Thurman appear in the briefs as to just what the holding of this court was in the latter case. Under such circumstances the decision of the court should be ascertainable by reading the syllabus. See Sec. 26, Article VIII, Constitution of Utah. Applicable point determined by the headnotes of this case read as follows:

"2. Appeal and Error—Harmless Error—Statute. Under direct provisions of Comp. Laws 1917, §§ 6622 and 6968, Supreme Court will not reverse judgment except for prejudicial error." (The above are now identified as sections 104-14-7, and 104-39-3, R. S. U. 1933 respectively).

"6. Trial—Instructions—Sufficiency. ) Trial court should concisely state issues to jury, and not merely read the pleadings verbatim.

"7. Appeal and Error—Harmless Error—Instructions. Trial court's error in simply reading pleadings to jury, and not concisely stating issues in his own language, held not prejudicial, where issues were simple, and substantially all allegations in both complaint and answer were controverted."

The issues in this case were not simple in any respect. Appellant was charged with having caused the death of

the motorcyclist in several particulars as heretofore outlined. Appellant denied responsibility for the accident and set up by way of contributory negligence that the deceased did not have his motorcycle under control, did not maintain proper lookout, and crossed into said intersection at a speed, which was not reduced, of 35 miles per hour.

The jury was twice informed (instruction one, paragraph four and Instruction eleven) that a driver intending to turn left at a semaphore controlled intersection must give the signal for such turn continuously during not less than the last one hundred feet traveled by the vehicle before commencing to turn. (For the purpose of the retrial this reference to this subject should not be construed as an approval of the instruction as correctly stating the law). Three times was the jury reminded that at a semaphore controlled intersection a driver intending to turn to the left shall yield to any vehicle approaching from the opposite direction which is within the intersection, or so close thereto as to constitute an immediate hazzard. (See Instruction one, subparagraph four and five and Instruction ten.) Aside from the subject of undue emphasis these instructions may not correctly set forth the law. (See Sec. 57-7-10 R. S. U. 1933, Chap. 48 p. 117, Session Laws 1935.) Two times was the jury's attention directed to the law on just where and when a left turn on a highway should be executed. (See Instruction one subparagraph five and Instruction twelve.)

We conclude that the reading of the long and involved complaint to the jury as part of the charge was error not altogether corrected by the mere admonition that the foregoing is not to be construed as evidence but merely sets forth the claims of the plaintiff. Likewise, the setting forth of plaintiff's theory in Instruction one, that the deceased would have soon been earning $200 per month was error for the reason that there was no evidence offered to support such allegation. See *State Bank of Beaver* v. *Hollingshead,* 82 Utah 416, 25 P. 2d 612. The setting forth in haec verba of applicable city ordinances and state

statutes in the Instruction relating to the pleadings was error especially when it is considered that not only did the trial court fail to caution the jury that such laws merely set forth plaintiff's claim but in a subsequent instruction the jury were directed to look elsewhere "in these instructions for certain laws relating to motor vehicle traffic" when plaintiff's complaint contained the only verbatim copy of any law in the entire charge. And the resulting emphasis on applicable laws favorable to plaintiff's side as the result of the continual reference and repeating of certain law propositions resulted in the unbalancing of the charge and error.

So, weighing and considering these several errors together in the light of our statute (Secs. 104-14-7 and 104-39-3 R. S. U. 1933), the conclusion must be reached that appellant's substantial rights were in fact affected and prejudiced in a material manner.

Having determined that the action must be retried, it now becomes necessary to discuss certain other law questions which will arise on the new trial. (Sec. 104-41-3 R. S. U. 1933.)

The parties differ as to whether the remarriage of the plaintiff, the surviving mother of the deceased, at a time subsequent to the accident but before the trial should be permitted to go before the jury as bearing upon the damage issue. Appellant maintains that such evidence should be permitted to go before the jury while respondent insists that the remarriage is immaterial because the damages should be measured as of the moment of death. There is a conflict among the authorities on this proposition. The rule generally followed is that the pecuniary loss to the beneficiaries is to be based upon conditions as they existed at the time of the death complained of. See note at 30 A. L. R. 121; *Simoneau* v. *Pacific Electric R. Co.*, 166 Cal. 264, 136 P. 544, 49 L. R. A., N. S., 737; *Davis* v. *Guarnieri*, 45 Ohio St. 470, 15 N. E. 350, 4 Am. St. Rep. 548; *Swift & Co.* v. *Foster*, 163 Ill. 50, 44 N. E. 837; *St. Louis,*

*I. M. & S. R. Co.,* v. *Cleere,* 76 Ark. 377, 88 S. W. 995; *Consolidated Stone Co.* v. *Morgan,* 160 Ind. 241, 66 N. E. 696; *Boswell* v. *Barnhart,* 96 Ga. 521, 23 S. E. 414; *Beaumont Traction Co.* v. *Dilworth,* Tex. Civ. App., 94 S. W. 352.

The minority rule holds that evidence is admissible covering a change for the better in the financial status of the beneficiary subsequent to the time of death. *Francis* v. *Atchison, T. & S. F. R. Co.,* 113 Tex. 202, 253 S. W. 819, 30 A. L. R. 114, 119; *Davis* v. *Wight,* Tex. Civ. App. 218 S. W. 26.

In *Francis* v. *Atchison, T. & S. F. R. Co.,* supra, it was held, upon the question of the amount of damages to be awarded parents for the wrongful death of an adult son, that evidence was admissible showing subsequent to death, said parents had become the recipients of an income through a policy on insurance on the life of another son. Such a holding in and of itself points out the salient weakness of this rule for, if evidence of a change in the financial condition of a beneficiary for the better occurring subsequent to death but before trial is admissible, reason would require that likewise evidence of the sudden poverty or misfortune of the statutory party after the time of death and before the trial should be received. So, ultimately and finally the question becomes as to whether in this jurisdiction the damage should be measured as of the moment of death or, for all practical purposes, the day of the trial. We feel that the fairest way to ascertain "such damages * * * as under all the circumstances of the case may be just" (Sec. 104-3-11 R. S. U. 1933) is to limit the inquiry on this issue to the moment of death. In so holding we do not in any way change the previous determination of this court to the effect that the physical and mental condition of the beneficiaries in an action for wrongful death should be considered by the jury in estimating the damages including particularly the age, health, and other similar circumstances (*Evans* v. *Oregon S. L. R. Co.,* 37 Utah 431, 108 P. 638, Ann. Cas. 1912C, 259; *English* v. *Southern Pac. Co.,* 13 Utah 407,

45 P. 47, 35 L. R. A. 155, 57 Ann. St. Rep., 772) except to now announce that such evidence should relate to the time of death.

The age and probable length of life of the deceased as of the moment of death is a relevant fact to be considered in estimating the amount of pecuniary loss caused by the death to the beneficiary to the action. See L. R. A. 1918E, 280 and other cases therein cited; 26 A. L. R. 595 and cases therein cited; 7 A. L. R. 1341 and cases therein cited; and see *English* v *Southern Pac. Co.*, supra. The disposition of the deceased toward aiding or supporting the beneficiary during his lifetime may be shown. And in connection with this disposition the affection or the absence thereof and the aid actually given may be shown. See *Evans* v. *Oregon S. L. R. Co.*, supra. And should it be made to appear that the disposition of the deceased was such that he would reasonably have continued to render services and help his mother after obtaining his majority then damages may be claimed for such prospective help that the deceased might have been given during the life of the beneficiary even though during that period he might be under no legal obligation to so help. *Bond* v. *United R. Co.*, 159 Cal. 270, 113 P. 366, 48 L. R. A., N. S., 687, Ann. Cas. 1912C, 60; *State* v. *Cohen*, 166 Md. 682, 172 A. 274, 94 A. L. R. 247; *Stejskal* v. *Darrow*, 55 N. D. 606, 215 N. W. 83, 53 A. L. R. 1096; *Franklin* v. *South Eastern Ry.*, 3 Hurl. & Nor. 211, 157 Eng. Rep. 448, 8 Eng. Rul. Cas. 419, and see annotation in 53 A. L. R. 1102, 1103.

In concluding this discussion it should be remarked that the mere fact that the deceased was single and might at some time marry is too remote to be given consideration as a separate issue. *Fritz* v. *Western Union Tel. Co.*, 25 Utah 263, 71 P. 209, and see L. R. A. 1918E, 282. This being the correct rule, it would likewise be improper to receive evidence bearing on the mere possibility of the remarriage of the surviving beneficiary. See 30 A. L. R. 124.

There is one other matter. This appeal and the trial below was had with the respondent appearing by her former name. Prior to the next trial she should ask leave to substitute her present legal surname (Tate) for the former one used at the time the complaint was filed (Shields). Should the plaintiff seasonably neglect to take this step the defendant is to have the privilege of forcing this change by motion for, when a woman marries, the law confers on her the surname of the husband. *Brown* v. *Reinke,* 159 Minn. 458, 199 N. W. 235, 35 A. L. R. 413, and see annotation at 35 A. L. R. 417.

The action is accordingly reversed and a new trial granted. Costs to appellant.

MOFFAT, Chief Justice.

I concur in the result.

LARSON, Justice. I concur.

PRATT, Justice.

I concur in the result.

WOLFE, Justice (concurring in part, dissenting in part).

[4] The measure of the damages is the loss of the probable contributions which deceased might have made toward support of respondent had he lived. This is to be measured as of the time the cause of action arose—at the time of the death due to negligence. But the difficult question is whether, in determining the probability of contributions as of that time, subsequent events which occurred up to the time of trial and which may throw light on that probability may be introduced. I think not. If the measure of damage is the loss of contributions commuted as of the time of death, we must consider the matter as if the jury had tried the case as of the time of death. The argument that any evidence of events occurring between the death and the trial which would tend to reduce the speculative element in the probability factor should be admitted is alluring

but specious. The doer of the negligence should not benefit by another's windfall nor respond because of another's misfortunes unconnected with his negligence. While the judgment is to compensate for a loss and not to penalize for carelessness, the very principle that the defendant should not benefit because of good fortune, fortuitous so far as it is concerned, nor be mulcted because of misfortune not related to its acts, requires that as of the time of the death we measure the *then* commuted value of the loss of probable contributions. This rule is born of its practicality. Otherwise a widow might owe the defendant money if it caused the death of a poor and undesirable husband thus giving her the enviable opportunity of consummating marriage with a rich and more desirable spouse. And where the death resulted in payment to the plaintiff of life insurance money which she otherwise would not have obtained, could the doer of the negligence argue that the death had actually benefited her more than any living contribution which she might expect? Appellant cannot claim the result of a benefit which may have ensued from its own wrong nor can it any the more take advantage of a betterment which came about subsequent to but not consequent on the death it caused. The loss becomes fixed at the time of death, for at that time the probable contributor was removed. I therefore, concur in the conclusion that the probable value of the loss of contributions commuted as of the time of death does not permit evidence of good or bad fortune not flowing proximately from defendant's negligence to be introduced in order to throw light on the probability of contributions. The probability is as it existed at the date of death and not as it might change with subsequent events.

But I cannot concur in the conclusion that the reiteration of the ordinances and laws relating to duties of persons driving vehicles on the street was prejudicial. Those laws and ordinances touched the rights and duties of both deceased and defendant. If this "placed the emphasis upon certain propositions of law as against others entitled to

equal weight" the propositions so emphasized were statutes specifying the rights and duties of both parties on the street. It was not a case of emphasizing the duties of the traction company and playing down the duties of the deceased or playing up his rights in relation to the defendant. If reiterated a dozen times it simply stated the statutory law governing *both* parties on the streets. It is not good practice to set out the claims of the parties pro haec verba as contained in their pleadings instead of condensing them in the court's own language, but to do so is not necessarily prejudicial.

Stating to the jury a claim as contained in the pleading when there was no evidence to support it is a more serious transgression, but in this case I think it could not have been prejudicial in view of the fact that the court notified the jury that the language of the pleadings was not evidence but only the claim as made by the plaintiff. Since there was no evidence to substantiate it and no instruction relating to it, we must assume that the jury did not consider it as evidence and did not take it into consideration. I think the judgment should be affirmed.

I call attention to the implication in the opinion that because Section 26, Article VIII of the Constitution requires this court to prepare a syllabus of all points adjudicated in each case which shall be concurred in by a majority of the judges, the syllabus is paramount over the language of the prevailing opinion. Where there is an ambiguity in the opinion the syllabus may be resorted to in clearing it up but where the syllabus and context are contradictory, I think we must still resort to the language of the opinion and not the syllabus as controlling. I must therefore emphatically dissent from portions of the opinion as indicated in my discussion.

McDONOUGH, J., being disqualified, did not participate herein.