393 P.2d 382

**Louise B. TAYLOR, Individually and as Guardian ad litem of James Taylor, Mary Louise Taylor and Susan Taylor, minors, Plaintiff and Appellant,**

**v.**

**Virginia Clare JOHNSON, Defendant and Respondent.**

**No. 9874.**

Supreme Court of Utah.

June 18, 1964.

Aldrich, Bullock & Nelson, Provo, for appellant.

Christenson, Novak, Paulson & Taylor, Provo, Hanson & Baldwin, Salt Lake City, for respondent.

WADE, Justice:

The plaintiff, Louise B. Taylor, on behalf of herself and minor children, seeks to recover for the death of her husband, James W. Taylor. He was killed while hitching a small tractor to the rear of a car by the defendant, Miss Johnson, who veered her car around the front of a wrecker into the rear of the trailer. From a jury verdict of no cause of action the plaintiff appeals. She claims (1) that the evidence conclusively shows that the defendant, Miss Johnson, as a matter of law was guilty of negligence which was the sole proximate cause of Taylor's death, and (2) that the jury instructions were long, drawn out, misleading, repetitious, erroneous, ambiguous, and over emphasized defendant's claims, which influenced the jury against plaintiff thereby depriving her of a fair trial.

The accident occurred June 13, 1961, on Highway U–28, north of Gunnison and

south of Levan, Utah, about 9:30 p. m. on a dark night. Don Milner, with his wife and daughter in the car, while driving north toward Levan with a small home-made trailer attached to the rear, struck a deer on the highway which broke his rear axle and stopped his car. The car came to rest a few feet east of the center line of the highway, facing toward the north. It was near the bottom of a mile-long dip in the road, which was straight and free from all visual obstructions for a half a mile in each direction. The highway had recently been resurfaced. It was 37 feet wide with a broken white line near the center and solid white lines near the outer edges. The shoulders were graveled into the borrow pits, which were quite wide.

Milner, with a flashlight, flagged down a car coming from the south. The driver, Mr. Kester, was an acquaintance and together they stopped another car whose driver went on to Levan where he engaged Mr. Taylor with the wrecker to tow in the Milner car. When the wrecker arrived they took the trailer from the rear of the Milner car and placed it behind the Kester car which was parked facing north with its right wheels on the east shoulder of the highway north of the Milner car. Taylor then backed the rear end of the wrecker, which was facing south, directly behind the Milner car and hoisted its hind wheels off the ground, and left it parked while he helped Milner and Kester hitch the trailer onto the rear of the Kester car. Miss Johnson came over the hill from the south while Taylor was between the trailer and the Kester car. She saw the headlights and the blue revolving light on top of the wrecker when she was a half mile away, but assumed it was moving toward her on the opposite side of the highway. According to her testimony she took her foot off the gas, reducing her speed from about 60 to 50 miles per hour, when she discovered that the wrecker was on her side of the road. To avoid a head-on collision she veered to the right around the front of the wrecker and into the rear of the trailer and the Kester car, which she could not see because they were parked behind the wrecker headlights facing her. The trailer was jammed into the rear of the Kester car and Taylor was killed between them. They were shoved with the Kester car brakes on more than 76 feet, and Taylor's body was found between the trailer and the Kester car. The diagram is for illustration only.

**■** (1) Viewing the evidence in the light most favorable to the decision, as the law requires, we find a reasonable basis for the decision in Miss Johnson's favor.[1] However, plaintiff Taylor's case strongly indicates that she was at fault. Admittedly, Miss Johnson recognized the wrecker a half a mile away on a dark night. She failed to ascertain whether it was moving or stopped, and she made no claim whatever that prior to the impact she reduced her speed slower than 50 miles per hour.

**■** Our statute [2] forbids driving on a highway at a speed greater than is reasonable under existing conditions, and where no special hazard exists, designates 50 miles per hour as the nighttime speed limit for this kind of a highway, and such was the posted speed limit on this highway that night. The statute makes any speed in excess of such speed limit prima facie evidence that such speed is not reasonable and is unlawful.[3] Until just before the accident, by her own admission Miss Johnson was exceeding the posted and statutory speed limit. This is so, even though she recognized that there was a wrecker on the highway. She makes no claim that she reduced her speed at any time before the collision slower than 50 miles per hour, the maximum speed limit, although a wrecker on the highway at night definitely should suggest to approaching traffic that there exists special hazards requiring a slower speed. However, what a reasonably prudent person would do under the existing circumstances is a question for the jury to determine, and we can only hold a party guilty of negligence as a matter of law where it is conclusively shown that the course pursued was not that of a reasonably prudent person. We therefore cannot direct a verdict on this question against Miss Johnson.[4]

**■** On the other hand, defendant Miss Johnson claims that Taylor was guilty of contributory negligence in failing to post flares to warn approaching traffic of the hazards on the highway. Flares are intended as a warning of obstructions of some duration.[5] Although the wrecker brought flares, which Taylor did not use, its stop on the highway was intended to be of only short duration. Both the wrecker and the Kester car were to be moved as soon as the trailer was hitched to the Kester car. As warnings to approaching traffic, each of the vehicles parked on the highway had the regular lights required for such vehicles, including the wrecker's dimmed headlights facing south, the blue revolving light on its top, and amber flashing lights on its front fenders. The trailer had red reflectors on its tailgates and the

1. See Anderson v. Nixon, 104 Utah 262, 139 P.2d 216; Ivie v. Richardson, 9 Utah 2d 5, 336 P.2d 781; Ferguson v. Jongsma, 10 Utah 2d 179, 350 P.2d 404.

2. See Section 41–6–46, U.C.A.1953.

3. See Section 41–6–46(2) U.C.A.1953.

4. See Federated Milk Prod. Ass'n. v. Statewide Plbg. & Htg. Co., 11 Utah 2d 295, 358 P.2d 348.

5. See Section 41–6–152(3), U.C.A.1953.

Milner and Kester cars had lighted headlights facing toward the north, and two men, each with a flashlight, were working on the trailer hitch. In addition, Mrs. Kester and her sister, who came with Mr. Kester, were stationed along the east right side of the Milner car with flashlights, watching for cars approaching over the hill from the south. As soon as approaching traffic became visible they would hurry south of the wrecker headlights to flag down such traffic.

Mrs. Kester testified that they had no trouble flagging down all of the number of cars which approached from the south prior to the Johnson car, and directing them to pass on the left west side of the highway. She testified that she saw the Johnson car headlights as it came over the hill from the south and immediately hurried to flag it down, but that it traveled so fast it passed her before she could get south of the wrecker's front headlights. She estimated the Johnson car speed at 70 to 80 miles per hour, and that there was no reduction of its speed before the crash. This and the fact that the crash shoved the trailer and the Kester car 76 feet on the highway with its brakes on indicate much greater speed than Miss Johnson concedes. But even if all these precautions were taken, the question of whether Taylor was guilty of negligence which proximately

contributed in causing the accident is a jury question.[6]

(2) However, there is merit to plaintiff's contention that the jury instructions were long, repetitious and not directly to the issues. They discussed propositions, and commented on factual situations which were foreign to the evidence. Many instructions ended with the statement that such a finding would require a verdict for the defendant. We conclude that the jury was misled and confused and plaintiff is entitled to a new trial.

The instructions contain no direct concise statement of the main determinative issues of fact in the case. Such issues were: (a) Whether Miss Johnson's negligence proximately caused the accident by continuing to drive for a full half mile at an unreasonably high and dangerous rate of speed, all the time knowing she was approaching a wrecker on the road but was unable to determine whether it was moving or stopped, or whether or not it was on her side of the road, or whether there were other vehicles stopped on the road in that neighborhood, until it was too late to avoid the accident. (b) Whether Taylor by contributory negligence proximately caused the accident by failing to place flares on the road or provide other warnings of the hazardous situation to approaching traffic. Such a statement of the

6. See note 4, supra.

issues in ordinary language not overburdened with legal terminology would have greatly clarified the jury's problems.[7]

At least ten different instructions, after presenting a fact situation, ended with a long, repetitious statement that such a finding required a verdict for the defendant. Some of the fact situations involved the question of Miss Johnson's negligence and others involved the question of Taylor's contributory negligence. Each instruction ended with the statement that if the jury found the facts as suggested "then the plaintiffs cannot recover and your verdict must be in favor of the defendant and against the plaintiffs, No Cause of Action." Three other instructions with fewer repetitious and positive directions recited the same conclusions. The above quotation is only a sample. It repeats three times in different language that under the suggested facts the plaintiff cannot recover; such statements were placed at the end of an instruction and emphasized with repetitions and capital letters. No such emphases were placed on the instructions in favor of the plaintiff.[8]

Instruction No. 17 states that "the law does not permit the heirs of a negligent person to recover against another negli-

gent person * * * and if the negligence of each proximately contributes *in any degree* to cause the accident then neither can recover. * * *" (Emphasis added.) We have criticized such an instruction in that it emphasizes the degree of negligence required to establish liability against the defendant, and suggests that very slight negligence on the part of the injured will defeat such liability, which may cause the jury to forget that the injured person's negligence will not defeat a recovery unless the jury finds it was a contributing proximate cause of the accident.[9]

Instructions Nos. 19, 20 and 22 each deals with an assumed factual situation which if plaintiff's claim of negligence were based thereon, a finding of such facts would exonerate Miss Johnson from negligence. However, in this case plaintiff's claim of negligence against Miss Johnson was based on her driving for a half a mile on a dark night, knowing that a wrecker was on the road, without reducing her speed to a reasonable rate in anticipation that she was approaching a hazardous situation. So the rules enunciated in these instructions being based on an entirely different factual situation have no

7. See Pulos v. Denver & Rio Grande R. Co., 37 Utah 238, 107 P. 241, Ann.Cas. 1912C, 218; Smith v. Columbus Buggy Co., 40 Utah 580, 123 P. 580; Davis v. Heiner, 54 Utah 428, 181 P. 587; Shields v. Utah Light & Traction Co., 99 Utah 307, 105 P.2d 347; Anderson v. Nixon, 104 Utah 262, 139 P.2d 216; Fowler

v. Medical Arts Bldg., 112 Utah 367, 188 P.2d 711.

8. See Johnson v. Lewis, 121 Utah 218, 240 P.2d 498; Devine v. Cook, 3 Utah 2d 134, 279 P.2d 1073; Ferguson v. Jongsma, 10 Utah 2d 179, 350 P.2d 404.

9. See note 8, supra.

application to this case and tended to mislead the jury.

Instruction No. 19 points out that on a dark night, headlights of an approaching vehicle obscure the vision of an approach-driver of objects in the neighborhood. Instruction No. 20 instructs that a driver cannot act instantaneously upon being suddenly confronted with danger. It fixes the reactionary period at approximately three-quarters of a second. Instruction No. 22 instructs that a person who is without fault who is suddenly confronted with great danger is not required to use as great a care and prudence as a person in more calm and deliberate moments. And Instruction No. 21 elaborates on the rule that Miss Johnson was required to use only ordinary, not extraordinary care. This instruction also fails to point out that the ordinary care requires that such care shall be the care of an ordinary prudent person. The instruction ended with the repetitious statement that a finding of such degree of care on Miss Johnson's part would require a verdict in her favor and against the plaintiff of no cause of action.

These instructions, if the fact situations assumed were determinative of Miss Johnson's negligence, would not be erroneous, but under the conditions here existing, they were misleading. The evidence shows that the wrecker headlights did obscure Miss Johnson's vision, and that she was suddenly confronted with an immediate hazard when in the immediate vicinity of the wrecker, she discovered that it was standing still on her side of the highway. Obviously she was not negligent by failing to react differently after making that discovery. However, there is no claim that such failure constitutes negligence on her part in this case. The only claim of negligence against her is that she drove her car on a dark night for a half a mile without reducing her speed so that she could safely avoid the hazards of meeting the wrecker, although she was fully aware during all of that time that the wrecker was there and probably creating a dangerous situation. Thus, these instructions took the jury's mind from the real issue and suggested she was not negligent if she acted as a reasonably prudent driver after she discovered that the wrecker was standing still on her side of the road. These instructions were misleading.[10]

There were many other instructions which emphasized defendant's claim that Taylor was guilty of contributory negligence, and present fact situations not supported by evidence, which, if true, would show him guilty of such contributory negligence. Thus, Instruction No. 29 suggests that if he left the wrecker an unreasonable length of time on the highway, he was guilty of contributory negligence. Instruction No. 30 suggests that if Taylor was working between the trailer and the Milner car in a dangerous position and

10. See note 8, supra.

failed to use reasonable care in watching for approaching vehicles while in that position, he was guilty of contributory negligence. Instruction No. 31 repeats about the same thing as the two previous instructions. All of these instructions ended up by stating if the jury found that he was guilty of contributory negligence, then plaintiff cannot recover. These instructions had a definite tendency to emphasize fact situations which were not supported by the evidence, and point out that if the jury so found, the verdict must be in favor of the defendant and against the plaintiff, no cause of action.

We conclude that under the circumstances disclosed in the record the instructions were misleading to the jury as to what would constitute negligence; that they were repetitious and many of them were premised on factual situations which were not supported by the evidence.[11] In view of the whole situation the court committed prejudicial error in emphasizing its instructions as it did in favor of the defendant and against the plaintiff, and that therefore the plaintiff is entitled to a new trial.

Costs to appellant.

McDONOUGH, J., concurs in the result.

CROCKETT, Justice (concurring specially):

I agree that this case should be remanded for a new trial.

Setting aside for the moment minor difficulties with the large number of instructions (47 were given) to the jury and directing attention to fundamentals it is my opinion that an insuperable obstacle relates to the submission to the jury of issues of fact concerning the deceased's contributory negligence which the evidence does not justify.

There is always a keen awareness that before any specific issue as to the *defendant's negligence* is submitted to the jury there must be a reasonable basis in the evidence which would support such a finding. This is a fair, reasonable and proper rule. But, in what impresses me as over-zealousness of defense, the corollary is often lost sight of: that before any specific issue of fact as to the *plaintiff's contributory negligence* should be submitted to a jury, there must also be a reasonable basis in the evidence to support such a finding. In fairness the rule should be applied with the same force to protect the rights of the plaintiff as the defendant.

The undisputed fact is that Mr. Taylor had just arrived at this scene to take care of the wrecked Milner automobile and trailer, and that he proceeded with dispatch to carry out this objective. The Milner car was so wrecked that it was necessary to lift and tow it from the rear end. This required removal of the trailer, which

11. See notes 4, 7 and 8, supra.

was done. It appears to me that the best way to guard against accidents with the disabled Milner car was just what Mr. Taylor did: He placed the wrecker south of it, facing south, with both headlights and its turret light on; and proceeded to attach the trailer to the car of Mr. Kester, who had agreed to tow it to town. It is significant that Mr. Taylor was between the Kester car and the trailer, leaning over fastening the trailer hitch, and had been so engaged for "a couple of minutes" when the collision occurred. While there is always danger involved in being so engaged on the highway, so far as I can see, each thing he did was essential to the accomplishment of the task he was required to do.

I can see nothing in the evidence to support a finding that Mr. Taylor was negligent either in leaving the wrecker on the highway for an unreasonable length of time; or in failing to keep a lookout for and seeing the approaching Johnson automobile. It is submitted that if some injury to a third party had resulted in connection with the deceased's conduct, there exists no basis whatsoever upon which a case charging him with negligence could have gone to a jury on either of those issues. Similarly, there was no justification for the court submitting to the jury the question of his contributory negligence as to them.

The deceased's duty and alleged failure to promptly remove the wrecker from the highway was dealt with in several of the defendant's requests, five of which were given to the jury. All of them conclude by saying that for his failure to do so they may find him negligent. It is not doubted that he had the duty to remove the wrecker as soon as that reasonably could be done. But the evidence here provides no foundation for a finding that he left the wrecker there for any longer than was necessary. Further, and more important on this point, is the fact that the length of time the wrecker had been there could have had no effect whatsoever upon the approaching Johnson car. Whether it had been there for minutes, or an hour, or more, the situation from the defendant's point of view and the resulting collision would have been exactly the same. Accordingly, even if the wrecker had been on the highway longer than necessary, which as above stated, the evidence is clear it was not, I fail to see how the length of time it had been there could have any bearing whatsoever upon the proximate cause of the collision. For both of the reasons just stated, it was error to submit to the jury the issue of negligence in leaving the wrecker on the highway for an unreasonable length of time.

The second basic error in submitting an issue not justified by the evidence relates to defendant's duty to look for and see vehicles on the highway as set forth in Instruction No. 28:

"The duty to use reasonable care to keep a proper lookout for other vehicles or things upon the highway, includes the requirement to *actually see as well as look,* for all vehicles reasonably within the range of his vision which may constitute a hazard. If you find that James W. Taylor should have seen defendant's vehicle before the collision, it was then his further duty *after having seen the defendant's car* to use such care and diligence as a reasonable person would use under the circumstances to avoid injury to himself, and if you find he failed to use such care and diligence then you may find he was negligent; and if you find that such negligence, if any, was a proximate cause of his injury, then the plaintiffs may not recover against the defendant." (Emphasis added.)

In considering the propriety of applying this instruction to this case these facts are important: Mr. Taylor was stooped down between the trailer and the Kester car, with his attention necessarily and properly focused upon his task of fastening the trailer hitch. Under such circumstances, he was not obliged to anticipate that an automobile would swerve from its course as the Johnson car did to strike him. It is obvious that he couldn't be doing the job required of him and also be watching for such traffic. And even if he had been looking, the trailer was between him and traffic approaching from the south, so that

from his position engaging the trailer hitch, it is doubtful that he could have seen the Johnson car approaching. Furthermore, even if he had seen it, from the defendant's own testimony that she swerved at the last instant, there is nothing deceased could have done to avoid the collision. Therefore, under uncontrovertible facts, there is no possible justification for imposing the duty upon the deceased to look for vehicles on the highway; and certainly not to require him to "actually see" and to act for his safety or be held negligent.

There are a number of other difficulties with the instructions given, which, in the interest of brevity, need not be detailed here, except that I deem it appropriate to make the following comments: First, I believe it is fair to state that both counsel for the plaintiff and defendant perpetrated an unconscionable imposition upon the trial court in their requests. The plaintiff submitted over 20, and the defendant over 30. A number of them were quite long and involved, and in numerous instances repetitious; and in some aspects represented attempts to argue the party's own position rather than to fairly and accurately present the disputed issues to the jury. Out of the plethora of requests, coupled with other instructions which it was necessary to give, the court gave a total of 47 instructions to the jury. I assume that no one will deny that this is undesirable, nor that the above stated faults

should be avoided in the event of another trial.

CALLISTER, J., concurs in the result for the reasons stated in the opinion of Mr. Justice Crockett.

HENRIOD, Chief Justice (dissenting):

I respectfully dissent. Many of the instructions given were standard, stock instructions. Those which the main opinion picks out as being objectionable do not seem to be objectionable at all, but may have been somewhat repetitious. None of them was obscure, but would appear to be clear and correct. To say they misled the jury is simply a conclusion on our part. There were other instructions that in the aggregate were just as favorable to plaintiff's case, though numerically there may not have been so many. We have said many times that we must view the instructions as a whole. If six seem to favor one side and four the other, we cannot say that because of numerosity the one more favored by them should prevail by virtue of the numbers. It is like saying one with five witnesses prevails over his opponent who could muster but three.

For us to volunteer in this particular case that the instructions, not obscure or confusing, misled the jury and took the jury's mind from the real issue, is to attribute to the members of the panel an inability to read the entire instructions, not generally attributable to the average jury,—so far as the courts are concerned, including this one,—that more than once has sung the jury's praises so far as being ordinary prudent persons having common sense and discernment are concerned.

The main opinion concedes that by all standards the jury's verdict was proper and completely defensible,—except for some wording taken from the instructions as a whole, and because the main opinion believes there were a few too many instructions that may have been repetitious.